**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Daniel Robert McQUILLEN, Defendant and Appellant.**

**No. 14168.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 18, 1984.

Decided March 21, 1984.

Steven R. Binger, Minnehaha County, Deputy State's Atty., Sioux Falls, for plaintiff and appellee.

Kevin E. Looby, Public Defender's office, Sioux Falls, for defendant and appellant.

DUNN, Justice.

This is an appeal from a judgment of conviction for first-degree rape, pursuant to SDCL 22–22–1(1). We affirm.

Sometime in the early morning hours of September 12, 1982, D.W., a twelve-year-old female, was waiting on a Sioux Falls, South Dakota, street corner for newspapers to be delivered to her so she could begin her regular paper route. Daniel Robert McQuillen (appellant) approached her on foot, grabbed her from behind, forced her across the street into a field, and raped her.

On September 24, 1982, Sioux Falls Detectives Smith and Fields went to appellant's apartment and requested that he have his picture taken in connection with an assault investigation unrelated to this rape case. Appellant voluntarily complied with the request, and no questions were asked of appellant at that time. On October 1, 1982, the detectives again went to appellant's apartment and requested that he come to the police station since he had been identified by the victim of the unrelated assault. Appellant voluntarily rode with the detectives to the station, and they informed him that he was not under arrest.

At the station, Detective Smith (Smith) took appellant to one of the interview rooms in the detective bureau. The door to the interview room has an automatic, self-locking mechanism, so that once it is closed, it is necessary to use a key to get in or out. During the time Smith questioned appellant, the door was kept closed.

Appellant and Smith talked about the unrelated assault for twenty to thirty minutes, and during the conversation, appellant admitted his guilt. At no time prior to the oral confession was appellant given a *Miranda* warning. Following the oral confession, Smith obtained a pre-printed statement form. The form contained a *Miranda* warning which appellant read and initialed; appellant also wrote his confession on the form and signed it. Smith then asked appellant the whereabouts of certain items of evidence. Appellant voluntarily took Smith to his apartment to get the items.

Approximately one hour later, appellant and Smith returned to the interrogation room at the police station. No *Miranda* warning was given to appellant when they returned. Smith told appellant that they should talk about other things, and appellant agreed. After reviewing the files of ten to fifteen cases, appellant orally confessed to committing two additional assaults and the September 12, 1982, rape. Appellant executed three more written confessions, each with *Miranda* warnings that appellant read and initialed. Appellant subsequently agreed to a line-up and was picked out by the rape victim. Appellant waived his right to a jury trial and was found guilty of first-degree rape by the trial court.

Appellant maintains that the trial court should have suppressed all of the oral and written statements he made to Smith. In support of this position, appellant asserts three theories: 1) that appellant was in custody prior to making the first oral confession,* thus making a *Miranda* warning necessary; since Smith failed to give him

the *Miranda* warning, appellant maintains the oral confession should be suppressed, as well as the later written confessions, which he claims are fruits of the tainted oral confession; 2) that even if he was not in custody at the time of the first oral confession, appellant claims he was later returned to the same locked room and placed in custody, with Smith again failing to give him a *Miranda* warning; 3) that his confessions were involuntary because of inducements by Smith.

The United States Supreme Court, in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), set forth the rule that the prosecution may not use statements stemming from a custodial interrogation of a defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. These safeguards include a warning to the defendant of his right to remain silent, right to presence of an attorney, etc.

■ It is fundamental that before the *Miranda* warning needs to be given, there must be a "custodial interrogation" of the individual. The Court in *Miranda* defined "custodial interrogation" as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of freedom in any significant way. The Supreme Court has also stated that police officers are not required to give the *Miranda* warning simply because the questioning takes place in the station house or because the questioned person is a suspect; the warning is only required when there has been such a restriction on the person's freedom as to render him in custody. *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *State v. Branch*, 298 N.W.2d 173 (S.D.1980). In *Mathiason*, the Court found no custodial interrogation where the defendant went to the station house voluntarily, the questioning took place for one-half hour behind "closed doors," and defendant

* The trial court found that appellant was not in custody despite the fact that he was being held in a locked room.

was told that he was a suspect. The Supreme Court has recently reaffirmed the *Mathiason* standard in *California v. Beheler*, —— U.S. ——, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983).

This court has set forth a number of factors to be examined in determining whether an interrogation is custodial or noncustodial: probable cause to arrest, subjective intent of the defendant, focus of the investigation, nature of the interrogator, nature of the suspect, time and place of the interrogation, nature of the interrogation, and purpose of the investigation. *State v. Bartunek*, 323 N.W.2d 121 (S.D. 1982); *State v. Branch*, *supra*.

■ After examining the circumstances of this case in light of the factors set forth above, we must conclude the trial court was correct in finding that appellant was not in custody at the time of his first oral confession. Appellant voluntarily went to the police station, as did the defendant in *Mathiason*. Appellant was given the option of going to the station in his own vehicle or the police car. On the way to the station, appellant rode in the back seat of the police car with the two detectives sitting in the front seat, a procedure which would not be allowed if appellant was under arrest. Appellant was told by the detectives that he was not under arrest and that he would be free to go.

While at the police station, the tone of the conversation between appellant and Smith was calm and not accusatory or hostile, and the conversation lasted only twenty to thirty minutes. Appellant was left alone in the interview room with the door open while Smith went to his desk to get police reports. Even when the door was closed there were no restraints placed upon appellant and he was free to move around the room. The police used no threats or physical force. In looking at the critical factor of the subjective intent of the appellant, we note that he was "glad to get that statement out" because it had been playing on his mind. All of these facts show that appellant was simply not faced with a coercive atmosphere within the standards of *Miranda* and *Mathiason*.

The fact that the conversation occurred in a room with a self-locking door does not by itself create a custodial interrogation, just as the "closed doors" of *Mathiason* did not create a custodial interrogation. Here, all of the other indicia of arrest or custody are absent. Therefore, appellant was not in custody at the time of the first oral confession and no *Miranda* warning was required. *See People v. Guillebeau*, 132 Cal.App.3d 265, 183 Cal.Rptr. 121 (1982). It was sufficient that the warning was given after the oral confession.

■ Appellant next contends that when he returned to the locked interrogation room approximately one hour after the first written confession, he should have been readvised of his rights under *Miranda*. The trial court found that a repeat of the warning was unnecessary, since appellant was not in custody when he returned to the interrogation room.

The facts are as follows: Appellant was not arrested after the first oral and written confession. When appellant took Smith to his apartment to obtain certain items of evidence, appellant was allowed to speak with his girl friend alone for ten to twenty minutes. Appellant voluntarily went back to the police station with Smith and he voluntarily agreed to talk about other police investigations. Appellant even suggested to Smith that Smith get the other police reports. The conversation was general and not focused upon any single crime.

Even though this conversation occurred in a room with a self-locking door, like the first conversation, all other indicia of arrest or custody are absent. Therefore, after examining the record in light of the case law discussed in issue number one, we conclude the trial court was not clearly erroneous in finding that appellant was not in custody when he returned to the station; the *Miranda* warning need not have been repeated.

Appellant's final contention is that the confessions should be suppressed as involuntary. He claims Smith induced him to confess with the promise that he would be charged with nothing short of murder.

While appellant did testify to this effect at the suppression hearing, Smith testified that he promised nothing in regard to this rape case. The trial court found that at no time did Smith make any promises in order to induce appellant to confess to the rape charge.

■ It is well established that it is for the trial court to weigh the credibility of the witnesses in making its findings. *State v. Starkey,* 247 N.W.2d 493 (S.D. 1976). We will not interfere with the trial court's resolution of conflicts in the evidence where its findings are supported. *Matter of Daly,* 280 N.W.2d 669 (S.D.1979). We find no error in the trial court's decision to accept the police officer's version of the facts.

The judgment of conviction is affirmed.

FOSHEIM, C.J., and WOLLMAN and MORGAN, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

## WAS THE CONFESSION VOLUNTARY?

Time chronology:

| | |
|---|---|
| 11:30 a.m. | Questioning began. |
| 11:30 a.m. – 12:19 p.m. | Damaging admissions (oral confession). |
| 12:19 p.m. | Written statement given. |
| 1:54 p.m. | Oral confession made. |
| 1:57 p.m. | Written confession given. |

I am to apparently believe that when the questioning began—in a locked interrogation room within the detective bureau of a police station and the detective has the only key—this was not custodial interrogation. Further, I am to believe this, notwithstanding the fact that the detective testified the defendant could not leave the room without Smith using his key to unlock the doors. Detective Smith also testified he never told defendant that defendant was free to leave the locked room. On occasions when Detective Smith left the room, Smith had to use a key to let himself out, which was witnessed by the defendant.

Between 11:30 a.m. and 12:19 p.m., focus was upon defendant as the perpetrator of this assault. For, indeed, Detective Smith possessed knowledge of (a) the victim's statements concerning the assault itself, and (b) the victim's identification of the defendant by a photograph. Detective Smith knew defendant was a suspect and could have proceeded with an arrest. He had sufficient grounds to sign a complaint for a warrant of arrest. Rather, he sought a confession.

Between 11:30 a.m. and 12:19 p.m. defendant orally confessed. Conceded by all is this fact: Defendant was given no *Miranda* warning prior to this oral confession. "Fruit of the poisonous tree" doctrine then attaches, in my opinion, and any oral or written statements in connection with this assault are inadmissible. The procedural safeguards affording protection against self-incrimination required by *Miranda* are lacking here. *Mathiason* is inapposite. Mathiason was not locked in a room the size of a cell. There was no restriction on his freedom to depart in any way. The United States Supreme Court considered this an important factor in *Mathiason.* Here, McQuillen witnessed the detective leave the room and use a key each time to get out from the *inside* of the room. Each time, the doors were locked and McQuillen was locked in the room restricted from his personal freedom. McQuillen was in custody. In *Mathiason,* the United States Supreme Court said *"Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Mathiason,* 429 U.S. at 495, 97 S.Ct. at 714, "[T]he ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler,* —— U.S. ——, ——, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275, 1279 (1983). Locked in a room so one cannot get out is certainly such a restraint on freedom of movement of the degree set out in *Beheler.*

I would reverse and remand for a new trial.