1996 SD 99

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Allen ETZKORN, Defendant and Appellant.**

**No. 19335.**

Supreme Court of South Dakota.

Considered on Briefs March 14, 1996.

Decided Aug. 7, 1996.

Mark W. Barnett, Attorney General, Jeffrey P. Hallem, Assistant Attorney General, Pierre, for plaintiff and appellee.

Lee C. "Kit" McCahren of Olinger, Lovald, Robbennolt and McCahren, Pierre, for defendant and appellant.

MILLER, Chief Justice.

[¶ 1] Allen Etzkorn (Etzkorn) appeals his conviction for driving while under the influence of alcohol (DUI). We reverse and remand.

### FACTS

[¶ 2] On March 7, 1995, state filed an information charging Etzkorn with DUI. The charge was filed in the alternative under SDCL 32–23–1(1) or 32–23–1(2):

A person may not drive or be in actual physical control of any vehicle while:

(1) There is 0.10 percent or more by weight of alcohol in his blood as shown by chemical analysis of his breath, blood or other bodily substance;

(2) Under the influence of an alcoholic beverage[.]

[¶ 3] Etzkorn's jury trial commenced before a magistrate judge on May 10. During voir dire, the following exchange occurred between Etzkorn's counsel and potential juror Kristina Kenney:

Q [By Etzkorn's counsel] This is a criminal case and the defendant is, Mr. Etzkorn is presumed to be not guilty. Is there anyone for whatever reason that has any difficulty or any hesitation whatsoever in presuming Allen to be not guilty at this time? It's a long question. There's a couple different variables. Let me try and simplify it.

Can you all presume Allen to be not guilty? Ms. Kenney?

A (BY KRISTINA KENNEY) Yeah, well, I've had experiences before with my ex-boyfriend being a drunk driver so I've kind of—I think it's kind of hard to not be caught for it, you know, if you were actually arrested for it.

Q So you feel you have a difficulty—based on your personal life you have a difficulty in presuming Mr. Etzkorn to be not guilty at this time?

A Right.

Q And that's not fair in this particular type of case?

A Yeah, I know but I just—

Q No, you'd love to serve as a juror, it's just that this type of case isn't appropriate for you then?

A Right.

Q And you're unable to presume him to be not guilty at this time?

A Yes.

[ETZKORN'S COUNSEL]: I'd challenge the juror for cause.

THE COURT: Let me ask you, if you're instructed as to the law in this matter will you be able to follow the law and if the law states that there is a presumption of innocence could you follow that?

KRISTINA KENNEY: I really don't know. I just, you know, I just got, you know, what has happened to me before. I just think it's hard for somebody to be

arrested for it without having proof that they were.

THE COURT: All right. But if the law is stated to you and you are instructed that that's one of your obligations, to follow the law and that a defendant does—there is a presumption of innocence, are you saying to me that you will not be able to follow that law?

KRISTINA KENNEY: I don't know exactly what the laws are in South Dakota for it because I'm originally from Iowa.

THE COURT: When you hear the laws—that's my job here—will you be able to follow those laws?

KRISTINA KENNEY: Yes.

THE COURT: If you're instructed to do that, in spite of this other feeling that you have?

KRISTINA KENNEY: Yes, I should be able to.

THE COURT: I'm going to deny your request.

[ETZKORN'S COUNSEL]: Really, she can't presume Mr. Etzkorn to be not guilty at this time. It's a hallmark to the system of the jury trial.

THE COURT: She just said that she's going to follow the law.

Q [ETZKORN'S COUNSEL] But ma'am, this is very important. I don't mean to single you out or act like I'm drilling upon you but the law requires that the complete jury is able to presume an individual to be not guilty. Complete honesty and candor is necessary when answering the questions in the jury selection process.

A (BY KRISTINA KENNEY) Yes.

Q It's what makes the system work. Can you state with no hesitation that Mr. Etzkorn is not guilty?

A No.

[ETZKORN'S COUNSEL]: I'd renew.

THE COURT: Denied.

Q [ETZKORN'S COUNSEL] Do you think it's fair that you would serve as a juror if you couldn't presume the defendant to be not guilty in this particular type of case?

A (BY KRISTINA KENNEY) Well, I wouldn't know until I heard the evidence.

Q But you said that you've already formed an opinion in your mind.

A I've just got that, you know, in my mind. You know, if I heard the evidence and there is a reasonable doubt then, yeah, I could probably say he's not guilty.

Q But, you're assuming the worst at this time?

A Yes.

Q You're assuming he's guilty?

A Yes.

[ETZKORN'S COUNSEL]: I'd challenge the juror for cause.

THE COURT: Denied.

[ETZKORN'S COUNSEL]: Really, your Honor, she assumes the defendant to be guilty.

THE COURT: But she also stated she will follow the law as it's given to her.

[ETZKORN'S COUNSEL]: You talked her into that.

THE COURT: [Counsel], proceed.

Q [ETZKORN'S COUNSEL] So you would require Mr. Etzkorn to put on some evidence of his innocence?

A (BY KRISTINA KENNEY) Yes.

[ETZKORN'S COUNSEL]: I'd again renew the challenge for cause.

THE COURT: Denied.

[ETZKORN'S COUNSEL]: That's not required either.

[¶ 4] At a later point during voir dire, Etzkorn's counsel had a similar exchange with potential juror Peggy Hofmeister:

[ETZKORN'S COUNSEL]: Thank you, your Honor. Good morning, Mrs. Hofmeister. Were you able to hear the questions that have been asked thus far?

A (BY PEGGY HOFMEISTER) Yes, I was.

Q And would you have responded to some or any of those questions?

A I would have had to respond. I was married to an alcoholic for 12 years who was arrested on five DUIs and he

was excused from some and probably shouldn't have been. I believe in the system, you know, that people are innocent until proven guilty. I am concerned about whether I would be a fair and impartial juror.

Q And you understand that some types of cases are not suited for some types of jurors?

A Yes.

Q Let me ask you this. If you were in Mr. Etzkorn's seat would you not want 12 jurors such as yourself hearing the facts of the case?

A Not knowing the whole case, I think I probably wouldn't.

Q You don't feel that this is the type of a case that you can be impartial?

A I'm just concerned about that.

Q You have hesitation in presuming this defendant to be not guilty?

A I do. I assume that since he's in this courtroom there was reason for him to be here.

Q So you have great hesitation in assuming him to be not guilty?

A Yes.

Q And you understand that we want 12 jurors that are able to presume him to be not guilty?

A Yes.

Q And it's very, very difficult for you to set your personal feelings aside when coming into this courtroom?

A I really think I could but when I heard what the case was about my instant thought was, "I've been through this before on a more personal level."

Q In fact, so you're saying that not only are you having hesitation in presuming this defendant to be not guilty, you're assuming the worst and assuming that he would be guilty?

A Yeah.

Q And would you require him to put on evidence of his innocence?

A Yes, I guess that's what I'm saying.

Q Even though our system does not require that, you yourself would?

A Yeah.

[ETZKORN'S COUNSEL]: I'd challenge the juror for cause.

THE COURT: So what I'm not clear on from what I've heard you say, Mrs. Hofmeister, is whether or not you'd be able to set aside the feelings that you have and listen to the evidence in this case and follow the law as you were instructed. Would you be able to do those two things?

PEGGY HOFMEISTER: I could follow the law.

THE COURT: After listening to the evidence?

PEGGY HOFMEISTER: Yes.

THE COURT: And base your decision only on what you've heard here today and the law that you're given?

PEGGY HOFMEISTER: That's where I'm hesitant. I think I can do that, Judge, but I just want Mr. Etzkorn to have a fair trial.

THE COURT: All right. I'm going to deny your request.

Q [ETZKORN'S COUNSEL] What you're saying, Mrs. Hofmeister, is that you don't think Mr. Etzkorn would get a fair trial if you were seated as a juror?

A I think I can be fair[.]

Q Even though you are presuming him to be guilty?

A Yes.

Q And the scales are tipped against his favor at this time?

A Yes.

Q Were there other questions that you would have responded to, ma'am?

A No. I don't know the defendant and I don't know the policeman or the lab person so I would have been quiet until we got to that point.

Q And aside from that, anything else?

A No.

[ETZKORN'S COUNSEL]: I'd pass subject to my earlier challenge.

THE COURT: All right. Go ahead.

[¶ 5] Etzkorn's counsel subsequently exhausted his peremptory challenges to remove Kenney, Hofmeister and a third potential

juror from the panel. The jury that was ultimately seated returned a guilty verdict against Etzkorn. Etzkorn filed a motion for a new trial based upon the trial court's refusal to remove Kenney and Hofmeister for cause. The motion was denied and a judgment of conviction and sentence was entered in June 1995. Etzkorn appealed his conviction to the circuit court, again questioning the trial court's refusal to remove Kenney and Hofmeister for cause. The circuit court affirmed and Etzkorn now appeals to this Court.

### ISSUE

[¶ 6] DID THE TRIAL COURT ERR IN DENYING ETZKORN'S CHALLENGES FOR CAUSE AS TO POTENTIAL JURORS KENNEY AND HOFMEISTER?

[¶ 7] Etzkorn again asserts the trial court erred in the denial of his challenges for cause as to potential jurors Kenney and Hofmeister. He contends he was prejudiced because the denial of his challenges for cause forced him to exhaust peremptory challenges on Kenney and Hofmeister when there were others he would have sought to remove from the panel by use of peremptory challenges.

[¶ 8] One of the primary responsibilities of a trial court is to make certain that a fair and impartial jury has been selected for the defendant's trial. *State v. Muetze,* 368 N.W.2d 575, 583 (S.D.1985). The Sixth Amendment to the U.S. Constitution, S.D. Const., art. VI, § 7 and SDCL 23A–16–3, guarantee the right of the accused to a trial by an impartial jury. *State v. Hansen,* 407 N.W.2d 217, 220 (S.D.1987); *Muetze,* 368 N.W.2d at 585. No specific test exists to determine if a potential juror is impartial. *Id.* However, "[a] potential juror should be excused for cause if that juror is unable 'to set aside preconceptions and render an impartial verdict.'" *Hansen,* 407 N.W.2d at 220.

[¶ 9] To determine if a juror should be disqualified, the voir dire must be considered in its entirety. *State v. Flack,* 77 S.D. 176, 180, 89 N.W.2d 30, 32 (1958). "Single isolated responses are not determinative." *Id.* On review, the voir dire, when examined as a whole, should show that the jurors understood: "(1) State had to prove guilt beyond a reasonable doubt; (2) *a defendant is presumed innocent until proven guilty;* and, (3) a determination of guilt must be based only upon evidence and testimony introduced during trial." *See Hansen,* 407 N.W.2d at 220 (emphasis added). Here, reviewing the whole voir dire of Kenney and Hofmeister reveals that neither individual could presume Etzkorn innocent. For that reason, both Kenney and Hofmeister should have been excused for cause.

[¶ 10] During voir dire, both Kenney and Hofmeister said that they had previously been involved in relationships with partners who drove when they were drunk. One stated that her boyfriend had been a drunk driver and the other said her husband had been convicted for drunk driving five times. Both indicated that these prior relationships with drunk drivers negatively affected their ability to presume Etzkorn innocent.

[¶ 11] Of the approximately fifteen times Kenney was questioned about her ability to serve as a juror and presume Etzkorn innocent, she failed to state even once that she could afford Etzkorn that presumption. Kenney did state that she would be able to follow the laws once she heard them, and later said that she "should be able to." However, each of those answers was prompted by questioning from the trial court. Moreover, after telling the judge that she could or should be able to follow the law, Kenney once again stated that she could *not* presume Etzkorn innocent.

[¶ 12] Juror Hofmeister was also questioned at least fifteen times about her ability to be impartial and presume Etzkorn innocent. Like Kenney, not once did Hofmeister state that she could presume Etzkorn innocent. Although, after questioning by the trial court, she stated that she could follow the law, she subsequently said that she presumed Etzkorn *guilty.*

[¶ 13] The foregoing voir dire, as a whole, shows that both Kenney and Hofmeister were unable to set aside their preconceptions and presume Etzkorn innocent. While expression of a predetermined opinion of guilt, by itself, does not disqualify a juror per se,

the inability to set aside such preconceptions and render an impartial verdict *is* disqualifying. *Hansen,* 407 N.W.2d at 220; *Muetze,* 368 N.W.2d at 585. Here, the entire voir dire of both Kenney and Hofmeister clearly evinces such an inability.

[¶ 14] State argues that Etzkorn has failed to establish that any actual prejudice resulted from the denial of his challenges for cause and, therefore, any error in the denial was harmless. We disagree.

[¶ 15] As support for its contentions, state relies on *State v. Blue Thunder,* 466 N.W.2d 613, 620 (S.D.1991):

> Blue Thunder has failed to demonstrate any actual prejudice as a result of the refusal of the trial court to disallow for cause these potential jurors. None of the jurors Blue Thunder complains of sat on the panel that tried him, as they were each removed by his exercise of peremptory challenges. He has not alleged that he was forced to accept the empaneling of any individual juror whom he would have otherwise removed by exercise of his peremptory challenges. Reversible error exists only where defendant can demonstrate material prejudice. On the basis of this record, we decline the invitation to overturn a ninety-year-old rule and, on that basis alone, we affirm the trial court. (citations omitted).

[¶ 16] State ignores that there is a key factor that distinguishes this case from *Blue Thunder.* In *Blue Thunder,* the defendant did not exhaust his peremptory challenges. In this case, Etzkorn *did* exhaust his peremptory challenges. Further, Etzkorn has alleged on appeal the names of several jurors he would have excused by way of a peremptory challenge if he had not exhausted his peremptory challenges on jurors Kenney and Hofmeister. In *Flack,* 77 S.D. at 179–180, 89 N.W.2d at 32, we held:

> A defendant should not be compelled to use his peremptory challenges upon prospective jurors who should have been excused for cause. Prejudice will be presumed if a disqualified juror is left upon the jury in the face of a proper challenge for cause, so that defendant must either use one of his peremptory challenges or

permit the juror to sit. Prejudice results when defendant is required to, and does, exhaust all of his allowable peremptory challenges.

[¶ 17] Given this settled statement of the law, the result of the denial of Etzkorn's challenges for cause was clearly prejudicial error depriving Etzkorn of the impartial jury he is constitutionally and statutorily guaranteed.

[¶ 18] Reversed and remanded.

[¶ 19] SABERS and AMUNDSON, JJ., concur.

[¶ 20] KONENKAMP and GILBERTSON, JJ., dissent.

KONENKAMP, Justice (dissenting).

[¶ 21] This is a case where the defendant does not allege the evidence was insufficient to convict him. His only assignment of error is the trial court's failure to excuse two jurors for cause. Nonetheless, the defendant used his preemptory challenges to excuse these jurors. The question is whether the defendant was somehow prejudiced by this. The answer is no, because he has failed to show that the twelve people who actually heard his case were not impartial. Consequently, the majority reverses simply because two prospective jurors were excused by the defendant rather than by the court. Yet we must always remember, "the Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Ross v. Oklahoma,* 487 U.S. 81, 91, 108 S.Ct. 2273, 2280, 101 L.Ed.2d 80 (1988)(quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986)).

[¶ 22] For constitutional purposes, the United States Supreme Court has settled this question:

> [W]e reject the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury. We have long recognized that peremptory challenges are not of constitutional dimension. They are a means to achieve the end of an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use a per-

emptory challenge to achieve that result does not mean the Sixth Amendment was violated.

*Ross* at 88, 108 S.Ct. at 2278, 101 L.Ed.2d at 90 (citations omitted).

[¶ 23] The majority incorrectly focuses upon the excused jurors, not whether the seated jury was fair and impartial. It continues to adhere to the antiquated rule that prejudice will be presumed if a defendant is forced to use a peremptory challenge when a prospective juror should have been removed for cause. Many courts faced with this very issue have fittingly abandoned this rule:

> Whatever [the juror's] prejudices were, she did not serve on defendant's jury. The search for legal prejudice must therefore focus on the potential for prejudice that flowed from forcing defendant to use a peremptory challenge on [the juror] that might have been used to remove another juror. In the absence of some factual showing that this circumstance resulted in a juror being seated who was not impartial, the existence of prejudice is entirely speculative.

*State v. Neuendorf*, 509 N.W.2d 743, 746 (Iowa 1993). The *Neuendorf* Court explained:

> Since the *Ross* decision disposed of the constitutional aspects of this issue, *at least nineteen states have refused to apply an automatic reversal rule.* ... Those states have concluded that in order to obtain relief under a legal theory that a juror is not impartial it must be shown that that juror actually served in the case. When that juror did not serve in the case, it must be shown that the jury that did serve was not impartial.

*Id.* at 747 (emphasis added) (citations omitted). Here, Etzkorn receives a new trial based on mere conjecture, as nothing in the record shows the *actual* jury was anything but fair and impartial. To require automatic reversal perpetuates adherence to an outmoded procedure which allows a justly convicted defendant a second shot at acquittal, without any showing the first jury was unfair in any respect.

[¶ 24] For these reasons, I respectfully dissent.

[¶ 25] GILBERTSON, Justice, joins this dissent and I am authorized to so state.