1996 SD 127

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Anthony John DARBY, Defendant and Appellant.**

No. 19317.

Supreme Court of South Dakota.

Considered on Briefs Sept. 12, 1996.

Decided Oct. 30, 1996.

Mark Barnett, Attorney General, Gary Campbell, Assistant Attorney General, Pierre, for plaintiff and appellee.

Jeff Larson, Minnehaha County Public Defender, Sioux Falls, for defendant and appellant.

GILBERTSON, Justice.

[¶ 1] Anthony John Darby was found guilty of three counts of first degree rape and sentenced on each count to 100 years imprisonment with forty years suspended. The sentences are to run concurrently. Darby appeals the judgment and sentences. We affirm.

## FACTS AND PROCEDURE

[¶ 2] Following a "good touch/bad touch" presentation by a Sioux Falls police officer at her school, eight-year old A.W. told her teacher she had been sexually abused by her step-father, Darby. It was also learned that A.W.'s ten-year old sister, A.L., had been sexually abused by him. The matter was referred to law enforcement wherein Detective Bailey and Lieutenant Folkerts of the Sioux Falls Police Department contacted Darby at his residence. Darby had undergone knee surgery the previous day and was using a crutch when he opened the door to the two officers. Although the officers were in plain clothes, they identified themselves to him and showed him their badges. Detective Bailey informed Darby his stepdaughters had made allegations of a sexual nature against him. The detective further informed Darby that he was not under arrest nor would he be placed under arrest that day. Darby admitted that sexual activity between himself and the two girls had occurred over the past year with the last incident occurring three days earlier. Mrs. Darby arrived home about that time and the officers asked him if he would be willing to go to the Public Safety Building and speak with them further. Darby indicated he had no vehicle available to him and, because of his knee surgery, didn't feel he was capable of driving anyway. He agreed to accept a ride from the officers and accompanied them to the police station for further questioning.

[¶ 3] At the police station, Darby was told that he was not under arrest, would not be arrested that day and that he was free to leave. He and officer Bailey entered an interrogation room where, in the next hour and a half, he confessed in a videotaped interview to between eight to ten incidents of sexual activity with his stepdaughters over

the past year. These incidents all took place in the residence and involved each girl alone with Darby or both girls together with him, and included sexual touching, masturbation, cunnilingus, and fellatio. He related he encouraged the girls to touch one another on several occasions, and on one occasion, masturbated while watching them. These incidents also included penile, digital, and battery-powered vibrator penetration of the girls. During the course of this interview, the police learned that Mrs. Darby, mother of A.W. and A.L., had prior knowledge of the sexual acts being perpetrated against her daughters by her husband. Following this interview, the police drove Darby home.

[¶ 4] The next day, Darby was arrested for sexual abuse of his step-daughters. A grand jury indicted him with three counts of first degree rape, one count of third degree rape, and three counts of sexual contact with a child. Darby pled not guilty to all counts. At a January 8, 1995 motions hearing, he withdrew his not guilty plea and entered a plea of guilty on Counts 4, 5, and 7. The trial judge granted Darby's motion to dismiss Count 6 on the grounds that his plea of guilty to Count 7 barred prosecution on Count 6 due to protection against double jeopardy. Darby was ordered to stand trial on the remaining three counts of first degree rape of A.W. Following a three-day jury trial, he was found guilty on all three counts. The trial judge sentenced him to serve 100 years with 40 years suspended on each count, sentences to be served concurrently. Darby was also sentenced to serve 15 years each on Counts 4, 5, and 7, to be served consecutively to one another but concurrently with the 60-year sentences.

[¶ 5] Darby appeals the final judgment and sentencing in this case, raising the following issues:

1. Whether the trial court erred in denying Darby's motion to make definite and certain or to dismiss?

2. Whether Darby's guilty plea to Count 4 (sexual contact) barred the State from prosecuting the first-degree rape counts?

3. Whether Darby's confession should have been suppressed as involuntarily given and given while in custody?

4. Whether the trial court erred in denying Darby's requests for excusing certain jurors for cause and/or additional peremptory challenges?

## ANALYSIS AND DECISION

[¶ 6] 1. **Whether the trial court erred in denying Darby's motion to make definite and certain or to dismiss?**

[¶ 7] Darby motioned the trial court to order the State to make the allegations against him more specific as to the dates of the alleged violations, or to dismiss the charges on grounds of his right to protection against double jeopardy. As noted above, following acceptance by the trial court of Darby's plea of guilty to Counts 4, 5, and 7, the trial court dismissed Count 6 on the basis of double jeopardy. The trial court denied the motion as to Counts 1 through 3 and ordered him to stand trial. Darby appeals the trial court's ruling on Counts 1 through 3. Because an examination of the counts under which he was indicted is necessary to this appeal, they are set forth in pertinent part below:

### COUNT 1

That on or between December 1, 1993 to December 4, 1994 in the County of Minnehaha, State of South Dakota, ANTHONY JOHN DARBY then and there did commit the crime of Rape in the First Degree by accomplishing an act of sexual penetration with [A.W.], when said victim was less than ten years of age, namely, of the age of 8, which conduct on the part of the Defendant was in violation of SDCL 22–22–1(1), contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of South Dakota.

The language in Counts 2 and 3 is identical to that of Count 1.

## COUNT 4

That on or between December 1, 1993 to December 4, 1994 in the County of Minnehaha, State of South Dakota, ANTHONY JOHN DARBY then and there did while being over the age of sixteen years and more than three years older than the victim, knowingly engage in sexual contact with another person, to wit: [A.W.], who was not the Defendant's spouse and who was under the age of sixteen years, in violation of SDCL 22–22–7, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of South Dakota.

## COUNT 5

That on or between February 12, 1994 to December 4, 1994 in the County of Minnehaha, State of South Dakota, ANTHONY JOHN DARBY then and there did commit the crime of Rape in the Third Degree by accomplishing an act of sexual penetration with [A.L.], where the victim was more than ten years of age but less than sixteen years of age, and where the Defendant was at least three years older than the victim, which conduct on the part of the Defendant was in violation of SDCL 22–22–1(5), contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of South Dakota.

## COUNT 6

That on or between December 1, 1993 and December 4, 1994 in the County of Minnehaha, State of South Dakota, ANTHONY JOHN DARBY did while being over the age of sixteen years and more than three years older than the victim, knowingly engage in sexual contact with another per-

son, to-wit: [A.L.], who was not the Defendant's spouse and who was under the age of sixteen years, in violation of SDCL 22–22–7, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of South Dakota.

## COUNT 7

That on or about December 4, 1994, in the County of Minnehaha, State of South Dakota, ANTHONY JOHN DARBY did while being over the age of sixteen years and more than three years older than the victim, knowingly engage in sexual contact with another person, to wit: [A.L.], who was not the Defendant's spouse and who was under the age of sixteen years, in violation of SDCL 22–22–7, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of South Dakota.

[¶ 8] "An indictment is sufficient if it 'contains the elements of the offense charged such that it apprises the defendant with reasonable certainty of the accusations against him, and it must enable him to plead an acquittal of conviction as a bar to future prosecutions for the same offense.'" *State v. Floody*, 481 N.W.2d 242, 246 (S.D.1992); *State v. Basker*, 468 N.W.2d 413, 416 (S.D. 1991); *Accord State v. Wurtz*, 436 N.W.2d 839, 843 (S.D.1989); *State v. Logue*, 372 N.W.2d 151, 155 (S.D.1985); *State v. Swallow*, 350 N.W.2d 606, 608 (S.D.1984).[1]

[¶ 9] At the outset, we note that the allegations in this case came to light because the victim under these three counts, A.W., told her teacher on December 7, 1994 that she had been sexually abused by Darby. He was interviewed by police officers that same

---

1. SDCL 23A–6–7 provides the requirements for sufficiency of an indictment or information. The statute provides:

    An indictment or information is sufficient if it can be understood therefrom:
    (1) That it is entitled in a court having authority to receive it, although the name of the court is not stated;
    (2) That the indictment was found by a grand jury of the county in which the public offense was committed;

    (3) That the defendant is named or, if his name is unknown, that he is described by a fictitious name with a statement that his true name is unknown to the grand jury or prosecuting attorney;
    (4) That the offense charged was committed within the jurisdiction of the county; and
    (5) That the offense charged is designated in such a manner as to enable a person of common understanding to know what is intended.

afternoon. At that time, he admitted the abuse to the officers indicating it had occurred over the past year, with at least eight to ten incidents, including two with A.W.'s sister, A.L. He further stated the last incident had occurred three days earlier. Thus, the dates set forth in Counts 1 through 3 of the indictment, December 1, 1993 to December 4, 1994, were provided to the State by Darby himself.

[¶ 10] SDCL 23A–6–9 supports the sufficiency of the information provided in Darby's indictment. This statute provides: "The precise time at which an offense was committed need not be stated in an indictment or information, but it may be alleged to have been committed at any time before the filing thereof, except when the time is a material element of the offense." The offenses in the present case are three counts of first-degree rape of a minor. We have previously held in cases of sexual abuse of minors that time is not a material element of the offense. *Floody*, 481 N.W.2d at 247; *Basker*, 468 N.W.2d at 416; *Wurtz*, 436 N.W.2d at 842; *Swallow*, 350 N.W.2d at 608. Our rationale for this holding was adopted from the Minnesota Supreme Court:

> [A]lthough an information should be as specific as possible with respect to time, it is not always possible to know with certainty when the offenses occurred; this is especially true in cases where there is a minor victim who does not immediately complain to the authorities; thus, specificity of time is not always required in the information.

*Id.* (citing *State v. Bird*, 292 N.W.2d 3 (Minn. 1980); *State v. Waukazo*, 269 N.W.2d 373 (Minn.1978)). In *Wurtz*, we held "lack of specificity as to time is no grounds for reversal." 436 N.W.2d at 842 (citing *Swallow*, 350 N.W.2d at 608).

[¶ 11] Secondly, we note Darby at no time requested a bill of particulars. This Court has recently stated, when addressing a claim of insufficiency of an indictment, that a defendant who feels he needs a more detailed

notice in the indictment to enter an informed plea and effectively defend against the charges should ask for a bill of particulars. *State v. Anderson*, 1996 SD 46, ¶ 16, n. 8, 546 N.W.2d 395, 400, n. 8. *See also Wurtz*, 436 N.W.2d at 842; *State v. Miller*, 429 N.W.2d 26, 40 (S.D.1988). In a case Darby cites in support of his argument, the defendant therein filed for a bill of particulars to which the State responded with additional details of the alleged incidents of rape. *Floody*, 481 N.W.2d at 246.

[¶ 12] Finally, we note that at the motions hearing, more than two months before trial, the State provided Darby with further detail as to the separate incidents when it advised him of the three means in which he committed the crimes—penile penetration, digital penetration, and penetration by an object. All of this information was presented to the grand jury as well as to the trial jury.

■ [¶ 13] We reject Darby's argument that the counts should have been more clearly identified in the indictment as three separate incidents.[2] All that is required is that he be apprised with reasonable certainty of the accusations against him, such that he is able "to plead an acquittal of conviction as a bar to future prosecutions for the same offense." *Floody*, 481 N.W.2d at 246. As to Darby's double jeopardy concerns, he is reminded that he need not rely on the indictment alone to protect him from future prosecutions, but "may allege and prove facts outside of the record in support of his plea of former adjudication." *Wurtz*, 436 N.W.2d at 843 (citing *State v. McGee*, 221 Neb. 557, 378 N.W.2d 674, 677 (1985)). We conclude the indictment sufficiently apprised him as to the period of time in which the rapes took place and that he was totally aware of the nature of the charges against him. It was information provided by Darby upon which the indictment was based; he cannot now claim he was not "apprise[d] ... with reasonable certainty of the accusations against him."

---

2. Although he is not claiming insufficiency of the evidence, we note that part of his complaint under this issue appears to be that nothing in the language of these three counts identifies them as three separate incidents and, as such, the jury could have convicted him of all three counts upon the evidence of only one rape. We have reviewed the evidence in this case and find it sufficient to support the jury's conviction on each of the three counts.

**[¶ 14] 2. Whether Darby's guilty plea to Count 4 (sexual contact) barred the State from prosecuting the first-degree rape counts?**

[¶ 15] The Fifth Amendment to the United States Constitution, as made applicable to the States by the Fourteenth Amendment, and Article VI, § 9 of the South Dakota Constitution, provide that no person shall be put into jeopardy twice for the same offense. Darby argues that the sexual contact to which he pled guilty in Count 4 provides the factual basis for the first degree rapes for which he was convicted in Counts 1 through 3. He claims that when the trial court accepted his plea of guilty to Count 4, he was put into double jeopardy in violation of his constitutional rights.

[¶ 16] We have adopted the *Blockburger* test in examining a claim of double jeopardy:

> The 'same offense' test as enunciated in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) is the test adopted in South Dakota in determining whether the threat of double jeopardy exists. *State v. Pickering,* 88 S.D. 548, 225 N.W.2d 98 (1975).... *Blockburger* reasoned that while a single act may be an offense against two statutes, two offenses may be said to have occurred only if each statute requires proof of an additional fact which the other does not.

*State v. Hoffman,* 430 N.W.2d 910, 911 (S.D. 1988) (citing *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 183, 76 L.Ed. at 309). The *Blockburger* test was recently examined and reaffirmed by the United States Supreme Court in *United States v. Dixon,* 509 U.S. 688, 704, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556, 572–73 (1993).

[¶ 17] In Counts 1 through 3, Darby was charged with first-degree rape under SDCL 22–22–1(1). That statute provides: "Rape is an act of sexual penetration accomplished with any person under any of the following circumstances: (1) If the victim is less than ten years of age; ..." "Sexual penetration" is defined in SDCL 22–22–2 as provided, in pertinent part:

> Sexual penetration means an act, however slight, of sexual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of the body or of any object into the genital and anal openings of another person's body. All of the foregoing acts of sexual penetration, except sexual intercourse, are also defined as sodomy....

In Count 4, he was charged with sexual contact with a child under sixteen under SDCL 22–22–7.[3] That statute provides:

> Any person, sixteen years of age or older, who knowingly engages in sexual contact with another person, other than that person's spouse if the other person is under the age of sixteen years is guilty of a Class 3 felony. If the actor is less than three years older than the other person, the actor is guilty of a Class 1 misdemeanor. Notwithstanding § 23A–42–2, a charge brought pursuant to this section may be commenced at any time before the victim becomes age twenty-five or within seven years of the commission of the crime, whichever is longer.

SDCL 22–22–7.1 defines "sexual contact," within the context of these statutes, as provided, in pertinent part:

> As used in this chapter, the term, 'sexual contact,' means any touching, not amounting to rape, of the breasts of a female or the genitalia or anus of any person with the intent to arouse or gratify the sexual desire of either party....

[¶ 18] Darby argues that one cannot commit an act of sexual penetration, i.e. rape, without also committing an act of sexual contact, stating that "one cannot penetrate something without touching it." On its face, this argument seems logically sound. However, this argument ignores the definition of "sexual contact" as set forth by the legislature in SDCL 22–22–7.1. Further, this Court held in *Brammer* that "the legislature did not intend the sexual contact statute to apply to touching incidental to rape; the two crimes are mutually exclusive, therefore, sexual contact is not a lesser included offense of rape." *King v. Solem,* 383 N.W.2d 852, 853 (S.D.1986) (discussing and citing *State v. Brammer,* 304 N.W.2d 111, 114 (S.D.1981)). In *Brammer,* this Court reversed a convic-

---

**3.** This charge was the result of an incident separate and independent from the three charges of first-degree rape described in Counts 1 through 3.

tion of sexual contact while upholding a conviction of rape, demonstrating that, as those two offenses are defined by our statutes, there can be factual situations in which the offense of rape is committed without the offense of sexual contact having been committed. 304 N.W.2d at 114.

[¶ 19] Plainly put, "sexual contact" requires proof of a specific intent to "arouse or gratify the sexual desire of either party." "Sexual penetration" requires proof of vaginal or anal intercourse, cunnilingus, fellatio, "or any intrusion, however slight, of any part of the body or of any object into the genital and anal openings of another person's body." Each statute requires proof of an additional fact the other does not.

[¶ 20] We find the *Blockburger* test to be met and no violation of Darby's constitutional rights against double jeopardy to have occurred in this case. He committed acts of rape and acts of sexual contact against the person of A.W. He pled guilty to the act of sexual contact with which he was charged. The trial court found a factual basis for his having committed the sexual contact and accepted the plea. That he admitted an element of penetration occurred during this same time period, thereby admitting more facts than were necessary to establish sexual contact had occurred, does not negate the plea to Count 4 nor does it bar prosecution on Counts 1 through 3. He argued at the motions hearing that "there is nothing in Count 4 that excludes a rape." This statement is incorrect. The statutory definition of "sexual contact" specifically excludes rape. SDCL 22–22–7 is cited in Count 4; SDCL 22–22–7.1 defines "sexual contact" as used in SDCL Ch. 22–22. At trial, the jury found a factual basis existed for Darby's having committed three separate acts of rape in the first degree and rendered a guilty verdict on each of the three counts.

[¶ 21] **3. Whether Darby's confession should have been suppressed as involuntarily given and given while in custody?**

[¶ 22] *A. Whether the interrogations were custodial?*

[¶ 23] Darby was not given *Miranda* warnings when Officers Bailey and Folkerts spoke with him at his residence on the afternoon of December 7, 1994, nor when the interview was continued some minutes later at the police station. The two officers arrived at his residence in an unmarked car and wearing plain clothes. They immediately identified themselves to Darby and showed him their badges. They informed him that his step-daughters had alleged he had sexually abused them. He admitted to the officers the allegations were true. Although he had undergone knee surgery one day earlier, the officers indicated he did not appear to be in pain or stress, did not take any medications while the officers were present, and did not appear to be under the influence of alcohol or drugs. The conversation between Darby and the officers at his residence lasted approximately ten minutes at which time Mrs. Darby arrived home. The officers asked him if he would like to continue the conversation at the police station and he agreed to do so, accepting a ride from the officers.

[¶ 24] Darby was informed prior to the interview that it would be videotaped, that the door to the room would be closed for privacy, but would remain unlocked and that he was free to leave at any time. He was advised that he was not under arrest and would not be arrested that evening. The interview at the police station lasted approximately one and one-half hours, during which he was permitted to smoke, and was provided with coffee and a chair on which to rest his leg. Only Darby and Officer Bailey were present in the room. Officer Bailey's tone was conversational and he did not raise his voice at any time during the interview. In the one and one-half hours, there were three breaks, each lasting approximately ten minutes, during which Officer Bailey left the room. During the interview, he did not request an attorney, medication, food, or drink, or to use the restroom. Following the interview, the officers provided him with a ride back to his home.

[¶ 25] The United States Supreme Court has held that:

Any interview of one suspected of a crime by a police officer will have coercive as-

pects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warning to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'

*Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719 (1977). This Court has cited the *Mathiason* standard with approval. *See State v. Jenner*, 451 N.W.2d 710, 719 (S.D.1990); *State v. Perkins*, 444 N.W.2d 34, 38 (S.D.1989); *State v. McQuillen*, 345 N.W.2d 867, 869 (S.D.1984); *State v. Branch*, 298 N.W.2d 173 (S.D.1980). The Supreme Court reaffirmed the *Mathiason* standard in *California v. Beheler*, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983). Thus, "[t]he proper test in determining whether a person need be given the *Miranda* warning is not whether the investigation has focused on any particular suspect, but rather, whether the person being questioned is in custody or deprived of his or her freedom to leave." *State v. Bruske*, 288 N.W.2d 319, 322 (S.D.1980) (citing *Mathiason*).

▬ [¶ 26] Here, the investigation was certainly focused on a particular suspect based on A.W.'s allegations and identification of Darby as her suspected abuser. However, during both the questioning at his home and the videotaped interview at the police station, he was informed by Officer Bailey that he was not under arrest and would not be arrested that day, and that he was free to leave. When asked to continue the questioning at the police station, he voluntarily agreed to do so. At that time he was offered the option of driving his own vehicle, taking a taxicab or riding with the police officers. *See McQuillen*, 345 N.W.2d at 870. Darby chose to accept a ride from the police officers. The door to the room in which Officer Bailey interviewed him was unlocked, of which he

was aware, but was closed for privacy. We have previously held that a closed, or even a locked, door does not, in and of itself, create a custodial interrogation. *Id.* No restraints were placed on Darby, and he was free to move about the room and free to leave. We reject the claim that because he was on crutches he was not free to leave. We do not find error in the trial court's conclusion that Darby was not in custody at the time of the interviews at his home and at the police station. His assertion that the trial court did not make this conclusion according to the "reasonable doubt standard" is without merit.

[¶ 27] *B. Whether the statements were voluntarily made?*

▬ [¶ 28] Darby also challenges the trial court's finding of voluntariness of his confession. In *State v. Dickey*, 459 N.W.2d 445, 447 (S.D.1990) we stated that in making a determination regarding the voluntariness of a confession, the trial court must consider the effect the totality of the circumstances had upon the will of the defendant and that the question in each case is whether the defendant's will was overborne. Therein, we cited the factors to be considered as including: 1) the defendant's youth; 2) the defendant's lack of education or low intelligence; 3) the absence of any advice to the defendant of his constitutional rights; 4) the length of detention; 5) the repeated and prolonged nature of questioning; and 6) the use of physical punishment such as the deprivation of food or sleep. *Id.* In reviewing the trial court's findings on voluntariness, we consider the evidence in the light most favorable to the finding. *State v. Oltmanns*, 519 N.W.2d 602, 605 (S.D.1994).

▬ [¶ 29] Applying the above factors to the present case, we note that Darby was 32 years of age at the time of the questioning and did not demonstrate a lack of education or low intelligence. No custodial interrogation took place so there was no advice regarding Darby's constitutional rights. The length of detention was one and one-half hours at the police station and approximately ten minutes prior to that time at his home.

There is no evidence of repeated or prolonged questioning and no evidence that he was deprived of food or sleep. Both interviews took place in the early evening and, as noted above, he drank coffee and smoked during the interview. He did not appear to be under the influence of medication, alcohol or drugs and his knee injury did not appear to exert any influence on his statements.

[¶ 30] A defendant's prior experience with law enforcement officers and the courts may also be a factor for the court's consideration. *State v. Caffrey*, 332 N.W.2d 269, 272 (S.D.1983). In the present case, the totality of the circumstances the trial court examined in making its determination included Darby's having had recent experience with law enforcement and the court system as the defendant in a jury trial on a felony D.U.I. charge in June 1994. This is a scant six months before the officers knocked on his door to question him about the sexual abuse of his step-daughters.

[¶ 31] Deception or misrepresentation by the officer receiving the statement may also be factors for the trial court to consider, however, the police may use some psychological tactics in interrogating a suspect. *Jenner*, 451 N.W.2d at 719. Though police ploys may be invoked to obtain a confession, the confession must be voluntary, that is, "a product of the suspect's own balancing of competing considerations." *Dickey*, 459 N.W.2d at 447. In the present case, as was the case in *Dickey*, the interrogating officer made statements to Darby about his needing counseling and that counseling was important to building a healthy father-daughter relationship. We have reviewed the videotaped interview and find these comments to be minimal, especially when viewed in the totality of the circumstances. We further find they did not have such an effect on Darby's own free will as to be coercive or manipulative such that he was not able "to make an unconstrained, autonomous decision to confess." *Id.* at 448. Darby's claim on appeal that Officer Bailey's comments led him to understand he would receive counseling in lieu of imprisonment, if believed, requires an extreme exaggeration of what was actually stated and the context therein, and

belies a knowledge of the law which every citizen is presumed to have. *Porter v. Porter*, 1996 SD 6, ¶ 14, 542 N.W.2d 448, 450; *Sioux Falls School Dist. v. S.D. Subsequent Injury Fund*, 504 N.W.2d 107, 109 (S.D. 1993). We do not find the trial court's determination that Darby's confession was voluntary to be clearly erroneous.

[¶ 32] **4. Whether the trial court erred in denying Darby's requests for excusing certain jurors for cause and/or additional peremptory challenges?**

[¶ 33] Darby used all twenty of his peremptory challenges at trial and requested additional peremptory challenges pursuant to SDCL 23A–20–21, which the trial court denied. He appeals the trial court's denial of additional challenges as well as the trial court's denial of his challenges for cause of four jurors on grounds of actual bias under SDCL 23A–20–10(3). These four jurors were Jurors Richert, Oyen, Meirose, and Whitney. Because the trial court denied the challenges for cause of these four jurors, they were removed from the jury panel through use of Darby's peremptory challenges.

[¶ 34] One of the primary responsibilities of a trial court is to make certain that a fair and impartial jury has been selected for the defendant's trial. *State v. Etzkorn*, 1996 SD 99, ¶ 8, 552 N.W.2d 824, 828; *State v. Muetze*, 368 N.W.2d 575, 585 (S.D. 1985). The mere expression of a predetermined opinion regarding guilt during voir dire does not disqualify a juror per se. *State v. Hansen*, 407 N.W.2d 217, 220 (S.D.1987); *Muetze*, 368 N.W.2d at 585. A potential juror should be excused for cause if that juror is unable to set aside preconceptions and render an impartial verdict. *Hansen*, 407 N.W.2d at 220; *Muetze*, 368 N.W.2d at 585. Determination of a juror's qualifications must be based upon the whole voir dire examination; "single isolated responses are not determinative." *Hansen*, 407 N.W.2d at 220; *State v. Flack*, 77 S.D. 176, 180, 89 N.W.2d 30, 32 (1958).

[¶ 35] SDCL 23A–20–12(2) provides the statutory basis for challenging a juror for

actual bias. The statute provides, in pertinent part:

A specific challenge for cause is that a juror is disqualified from serving in the case of trial because of:

. . . .

(2) Actual bias.

Actual bias is the existence of a state of mind on the part of a juror, in reference to the case or to either party, which satisfies the court, in the exercise of sound discretion, that he cannot try the issue impartially, without prejudice to the substantial rights of the party challenging.

In a challenge for actual bias, cause must be alleged. . . .

■■■■■ [¶ 36] A trial judge is vested with broad discretion in determining juror qualifications. *Hansen,* 407 N.W.2d at 220. Before we will reverse a trial court's refusal to disallow for cause potential jurors, the movant must show actual prejudice resulting from the trial court's decision. *State v. Blue Thunder,* 466 N.W.2d 613, 620 (S.D.1991). "Reversible error exists only where defendant can demonstrate material prejudice." *Id.*

[¶ 37] An examination of the voir dire of the four jurors and Darby's objections is necessary to our review of this issue:

■■■■ [¶ 38] Richert explained at voir dire that she had three daughters and because of this fact, this would be one of the tougher cases for her to sit on. However, in response to the next question from Darby's attorney, Ms. Richert admitted she would have no trouble in presuming his innocence and informed the trial court that she could decide the case based on the facts as she heard them and the law as she was instructed.

■■■■ [¶ 39] Oyen explained that at a prior time a man who lived with Oyen's brother, in another part of the state, had sexually molested Oyen's niece and that the man was convicted and had served time in the state penitentiary for this crime. Oyen stated he had very strong opinions on child molestation and that he has worked with children the same age as the victim in the present case for almost twenty years. He also stated he believed if convicted, child molesters should be jailed and the key thrown away. When questioned more closely as to his feelings about his niece's experience and the trial in that case, Oyen admitted he "stayed very neutral," did not attend the trial and did not know the particulars of the case. He assured the trial court herein that he could put aside his personal feelings and judge this case on the facts and the law presented to him. Further, the trial court instructed Oyen that punishment of convicted persons was the court's responsibility. When asked by the trial court if Oyen had a problem with that, Oyen responded he did not. He also offered that he had seen something in the news media about Darby, but could not remember it, nor could he remember if the report involved this case or some unrelated event.

■■■■ [¶ 40] Meirose had family members and friends who worked at the state penitentiary and she worked at a juvenile detention center. She also related that about ten years ago, a female adult neighbor was raped and that a neighbor child was the victim of an indecent exposure. Darby's attorney asked that Meirose be removed for cause due to her educational background in sociology and psychology and her employment at the juvenile center. The trial court denied the request, stating that jurors are permitted to bring their common knowledge into the jury room. Meirose had earlier been informed by Darby's attorney she could not bring her expertise into the jury room.

■■■■ [¶ 41] Whitney, a sports editor for a Sioux Falls newspaper, the *Argus Leader,* recalled reading a story in the paper about Darby and the accusations against him. When asked, he stated it would not be difficult for him to isolate himself in the newsroom from the reporter the newspaper would assign to cover the trial. Darby's attorney asked that Whitney be excused because he recalled more from reading the newspaper story than the other potential jurors did, including some information that had been excluded from the trial. Whitney had earlier stated that he could block out of his mind any information not obtained during the trial and

decide the case on the evidence presented at trial.

[¶ 42] Apart from the statements outlined above, all four jurors indicated that they could presume the defendant innocent until proven guilty and that they could put their personal beliefs aside and judge the case solely on the facts presented to them at trial and the instructions from the trial court on the law of the case. As indicated above, Darby used peremptory challenges to remove these jurors from the jury panel.

[¶ 43] Though no specific test exists to determine if a potential juror is impartial, the voir dire must show the jurors understand that: 1) the State must prove guilt beyond a reasonable doubt; 2) the defendant is presumed innocent until proven guilty; and 3) a determination of the defendant's guilt must be based solely on the evidence and testimony introduced at trial. *Etzkorn,* 1996 SD 99, ¶¶ 8–9, 552 N.W.2d at 828 (quoting *Hansen,* 407 N.W.2d at 220). Our review of the voir dire of the four challenged jurors shows no abuse of discretion in the trial court's refusing to excuse them for cause. Moreover, while this Court found in *Etzkorn,* 1996 SD 99, ¶¶ 14–17, 552 N.W.2d at 829, that the defendant established prejudice, Darby has failed to show the twelve jurors who actually heard the evidence and convicted him based upon that evidence were not impartial.

[¶ 44] We affirm. We further note that although Darby states in his brief that he is appealing from both the judgment and sentences, he had not briefed an argument based on his sentences. Failure to argue an issue after it has been raised on appeal waives the issue. SDCL 23A–32–14; SDCL 15–26A–60(6); *Corbly v. Matheson,* 335 N.W.2d 347, 348 (S.D.1983).

[¶ 45] MILLER, C.J., and AMUNDSON and KONENKAMP, JJ., concur.

[¶ 46] SABERS, J., dissents.

SABERS, Justice, dissenting.

**Darby's confession should have been suppressed as involuntarily given in custody and without Miranda warnings.**

[¶ 47] This case is strong evidence that history repeats itself. Law enforcement officers throughout this state continue to interrogate suspects in accusatorial, rather than investigative settings, without giving the suspect *Miranda* warnings. As I stated in *State v. Dickey,* 459 N.W.2d 445, 451 (S.D.1990) (Sabers, J., concurring specially):

> I write specially to point out that almost all of the time, trouble, and effort expended in this appeal could have been avoided if law enforcement officers followed the simple admonition of Justice Morgan in *Satter v. Solem,* 434 N.W.2d 725, 727 (S.D.1989), (*Satter II* ):

>> After all, it requires no great effort to take out the *Miranda* card, read the subject his rights, and ask the simple questions: Do you understand your rights and do you waive them?

[¶ 48] The majority beats itself about the head with rationalizations of investigatory or accusatory custody or noncustodial conversational or nonconversational deception or misrepresentation coercive or manipulative voluntary or involuntary.

[¶ 49] The fact of the matter is that there was only one suspect, and that was Darby. If he did not do it, no one did. If Darby did not sexually abuse these children, no one did and no crime would even have been committed. Therefore, there was only one suspect and he was in custody for interrogation without *Miranda* warnings. *See State v. Kaiser,* 504 N.W.2d 96, 103 (S.D.1993) (Sabers, J., concurring in part and concurring specially in part) (arguing *Miranda* warnings should have been administered when sole suspect was transported to station for questioning).

[¶ 50] Law enforcement officers know better. They and the justice system were burned in *State v. Oltmanns,* 519 N.W.2d 602 (S.D.1994), and if they maintain their present practice, they will be burned again.

[¶ 51] In *Oltmanns,* the law enforcement officers did almost everything necessary to obtain a conviction except step one. They got Oltmanns in the police station for interviews, fingerprinting, and a polygraph examination. They omitted one step, they failed to give Oltmanns his *Miranda* warnings. For

that and other reasons, the trial court necessarily suppressed Oltmanns' statements as involuntary. We affirmed on appeal and law enforcement, through its own doing, dropped the case and were appropriately publicly embarrassed.

[¶ 52] Maybe law enforcement feels more good than bad comes from failing to give *Miranda* warnings. Maybe they will persist in their present practice. If so, it won't be long before the results necessarily required in *Oltmanns* will revisit them.

[¶ 53] I would reverse and remand for the trial court to instruct the officers to provide solo suspects the *Miranda* warnings required by the United States and South Dakota Constitutions.