1997 SD 15

STATE of South Dakota, Plaintiff
and Appellee,

v.

Robert Lee THOMPSON, Defendant
and Appellant.

No. 19540.

Supreme Court of South Dakota.

Considered on Briefs on Jan. 16, 1997.

Decided Feb. 19, 1997.

Mark Barnett, Attorney General, Paul Cremer, Assistant Attorney General, Pierre, for plaintiff and appellee.

Michael J. McGill, Beresford, Thomas H. Frieberg & Gregory T. Brewers of Frieberg, Rudolph and Peterson, Beresford, for defendant and appellant.

GILBERTSON, Justice.

Robert Lee Thompson appeals from his convictions of first-degree rape, sexual contact with a child under the age of sixteen, indecent exposure, and disseminating harmful material to minors. We affirm Thompson's conviction of rape, the primary charge against him. We also affirm all other convictions with the sole exception of the conviction of sexual contact, which we reverse and remand with instruction.

## FACTS AND PROCEDURE

Robert Lee Thompson [hereinafter Thompson] is an uncle to the three children pertinent to this appeal. Thompson was charged with sexual misconduct involving his

three nieces, identified as C.B., V.B., and Ch.B.[1] These children were ages 6, 9, and 10, respectively, when the alleged abuse occurred during a four-month period from January to April 1992. During this time, Thompson was babysitting the girls in the mobile home in North Sioux City where he and his wife resided. Mrs. Thompson worked outside the home during this time and was not present when the alleged abuse occurred.

■■ The accusations of abuse which gave rise to the charges involved in this appeal began in March of 1994 when C.B.'s father arrived home from work on a Friday evening, bringing with him videotapes for his daughters to watch. That evening, when the girls were getting ready for bed, C.B. told her father that her Uncle Bob made her watch dirty movies. Later that evening, C.B.'s father related this conversation to his wife and to his sister-in-law, V.B.'s and Ch. B.'s mother.

■ On March 23, 1994, C.B. was interviewed by Kathy O'Brien, a licensed social worker with experience in interviewing abused children. This interview was at the request of Chief of Police for North Sioux City, Avery (Skip) Ensley. C.B. informed O'Brien that Robert Thompson had exposed her to pornographic material and to body parts. She made no disclosure of physical contact at that time.

■■ On March 28, 1994, Ensley completed his request for an arrest warrant based on three charges: disseminating harmful materials to minors, indecent exposure, and sexual contact with a child under the age of sixteen. The sexual contact charge was the only felony charge. On March 28, 1994, Thompson was a Nebraska resident and could not be extradited to South Dakota unless a felony was charged.

■■ On April 8, 1994, Ensley interviewed Thompson at the Dixon County Sheriff's office in Ponca, Nebraska. Thompson resided in Ponca and drove himself to the interview at the request of a Ponca County sheriff's deputy. Thompson was questioned by Ensley in a closed-door room for approximately one hour and fifteen minutes. Prior to questioning, Ensley informed Thompson he was not under arrest and was free to leave. He did not advise Thompson of his *Miranda* rights at any time during the questioning. Ensley recorded a portion of the interview. There was one break, during which Ensley stepped out of the room. During this interview, Thompson admitted that he had exposed C.B. to a pornographic movie and that he had masturbated in her presence. He also admitted C.B. had touched his penis. Following these admissions, and at the close of the interview, Ensley asked Thompson to provide a written statement, which he did. The written statement included only the admissions involving masturbation and the pornographic movie, however, and did not include any statement about the unlawful touching. While Thompson was putting his admissions into written form, the sheriff's deputy who had called Thompson was also in the room. At all other times during the interview, no one was in the room with Thompson and Ensley.

[¶ 7] On April 15, 1994, C.B. was examined by a medical doctor, Dr. John Shelso. Dr. Shelso found signs of vaginal penetration during the physical examination and from an examination of photographs (magnified colposcopic slides) he took.

[¶ 8] On April 28, 1994, V.B. and Ch.B. were interviewed by O'Brien.[2] Neither girl made any allegation of physical contact by Thompson during this first interview, although they would do so at a later interview by O'Brien.

[¶ 9] Dr. Gary Carlton conducted a physical examination of V.B. and Ch.B. on May 2, 1994. He made findings suggestive of vaginal and rectal penetration of V.B., and of vaginal penetration of Ch.B.

[¶ 10] On May 9, 1994, an information was filed charging Thompson with the crimes of sexual contact with a child under the age of

---

1. V.B. and Ch.B. are sisters and they are first cousins to C.B.

2. O'Brien testified she ultimately interviewed fifteen children in the investigation of this case. All were cousins who had been left in the care of the Thompson household at one time or another.

sixteen (SDCL 22–22–7), indecent exposure (SDCL 22–24–1), and disseminating harmful material to minors (SDCL 22–24–28). On June 20, 1994, a second information was filed charging Thompson with the crimes of first-degree rape (SDCL 22–22–1(1)) and second-degree rape (SDCL 22–22–1–(2)). A trial commenced on charges stemming from these two informations but was later held to be a mistrial.[3] On August 14, 1995, a third information was additionally filed charging Thompson with first-degree rape (SDCL 22–22–1(1)) of C.B. Thompson pled not guilty to all charges. All of the informations were joined into one trial by jury which commenced October 30, 1995.

[¶ 11] The jury found Thompson guilty of first-degree rape, sexual contact with a child under the age of sixteen, indecent exposure, and disseminating harmful materials to minors. All of these charges involved C.B. It acquitted Thompson of a second charge of first-degree rape and second-degree rape, charges that involved V.B. and Ch.B. In a subsequent proceeding, Thompson was found guilty of being a habitual offender. He was sentenced January 8, 1996 to life imprisonment in the state penitentiary on the conviction of first-degree rape. Concurrent with the life sentence was a sentence of twenty years for sexual contact with a child under the age of sixteen. Thompson also received consecutive sentences of one year in the county jail and a fine of $1,000 each on the convictions of indecent exposure and disseminating harmful material to minors.

[¶ 12] Thompson appeals his convictions, raising the following issues:

1. Whether the trial court abused its discretion in improperly joining the charges or failing to grant Thompson's motion to sever?

2. Whether the trial court erred in failing to suppress evidence of an admission by Thompson?

3. Whether the trial court erred in denying Thompson's motions to dismiss, for a judgment of acquittal, and for a new trial on the sexual contact charge

where the only evidence supporting the charge was Thompson's uncorroborated admission?

## ANALYSIS AND DECISION

**[¶ 13]1. Whether the trial court abused its discretion in improperly joining the charges or failing to grant Thompson's motion to sever?**

[¶ 14] We review a trial court's decision to join or sever charges under an abuse of discretion standard. *State v. Busack,* 532 N.W.2d 413, 417 (S.D.1995). An abuse of discretion "arises only where the party requesting severance of joined counts can make 'a clear showing of prejudice to substantial rights.' " *Id.* (quoting *State v. Shape,* 517 N.W.2d 650, 654 (S.D.1994)).

[¶ 15] SDCL 23A–11–1 provides for joinder of informations at trial:

A court may order two or more indictments or informations, or both, to be tried together if the offenses, and the defendants, if there is more than one, could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under a single indictment or information.

SDCL 23A–6–23 provides the standard for whether more than one information or indictment may be joined:

Two or more offenses may be charged in the same indictment or information in separate counts for each offense, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

SDCL 23A–11–2 sets forth·guidelines to the trial court where it appears joinder may result in prejudice to the defendant or to the State:

If it appears that a defendant or the state is prejudiced by a joinder of offenses or of

---

**3.** Thompson's appellate brief explains the mistrial resulted from the discovery that some of the impaneled jurors had formed and expressed their

opinions regarding Thompson's guilt prior to conclusion of the trial.

defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the prosecuting attorney to deliver to the court for inspection in camera any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial.

[¶ 16] In *Busack*, we held that joinder may be appropriate "[w]here separately charged offenses are closely related in location and manner of execution...." 532 N.W.2d at 417; *State v. Closs*, 366 N.W.2d 138, 140 (S.D.1985). This test for finding joinder appropriate where the separately charged offenses are closely related in location and manner of execution has been broadly construed. *Shape*, 517 N.W.2d at 654 (citing *State v. Dixon*, 419 N.W.2d 699, 702 (S.D. 1988)).

[¶ 17] In *Closs*, this Court found no abuse of discretion by the trial court in joining for trial two informations charging the defendant with two separate incidents of burglary and theft, where the charges were of the same or similar character, the incidents had occurred only one month apart and were closely related in time, place and manner of execution. 366 N.W.2d at 140. More recently, in *Busack*, we found no abuse of discretion by the trial court in joining for trial defendant's offenses of methamphetamine possession and distribution and later counts of cocaine possession where both indictments involved illegal possession of controlled substances, and were closely related in location and manner of execution. 532 N.W.2d at 417.

[¶ 18] The facts of the present case indicate the six charges against Thompson were properly joined as they were similar in character and closely related in time, place, and manner of execution. *Closs*, 366 N.W.2d at 140. Here, all of the charges involved sexual misconduct of three minor children, all nieces of Thompson's. The alleged abuse occurred over a four-month period, from January to April 1992, and all of the alleged illegal activity occurred in Thompson's North Sioux City mobile home where he was babysitting the girls at the time. We find another test, one allowing joinder if the charges are based on acts which constitute a common scheme or plan, is also met in this case. *State v. Olson*, 449 N.W.2d 251, 256 (S.D. 1989) ("Offenses may be charged together, under SDCL 23A–6–23 [where] 'two or more acts or transactions [are] connected together or constitut[e] parts of a common scheme or plan.' "). Here, evidence indicated Thompson made various threats to each of the girls to ensure they would not tell anyone of the alleged abuse. These threats, accompanied by the fact that all alleged abuse occurred in the mobile home while Thompson was babysitting the children, shows a common scheme or plan.

[¶ 19] The party opposing joinder of the offenses must establish prejudice by sufficient evidence to justify severance of the counts under SDCL 23A–11–2. *Shape*, 517 N.W.2d at 654. This Court has noted that "[a]ny joinder of offenses is apt to involve some element of prejudice to the defendant, since a jury is likely to feel that a [defendant] charged with several crimes must be a bad individual who has done something wrong. However, if the notion of involuntary joinder is to retain any validity, a higher degree of prejudice, or certainty of prejudice, must be shown before relief will be in order." *Dixon*, 419 N.W.2d at 703 (quoting State v. Hoffman, 106 Wis.2d 185, 316 N.W.2d 143, 157 (1982)).

[¶ 20] Here, the trial court instructed the jury to separately consider each offense charged and the evidence applicable thereto. The jury acquitted Thompson on the counts of rape in the first-degree and rape in the second-degree involving V.B. and Ch.B. A judgment of acquittal on some of the charges and not all of them demonstrates the jury was sufficiently able to understand the trial court's instruction and successfully differentiate between the charges and the evidence pertaining to them. *See Busack*, 532 N.W.2d at 417. We hold that joinder of these six counts was not improper and that no prejudice resulted.

[¶ 21] **2. Whether the trial court erred in failing to suppress evidence of an admission by Thompson?**

[¶ 22] Thompson argues the trial court erred in failing to suppress evidence of his admission to Officer Ensley as the admission was involuntary and in violation of his *Miranda* rights. As will be shown in issue 3, *infra,* Thompson's admission of sexual contact was erroneously admitted into evidence at trial as there was no independent evidence to corroborate it. In addressing Thompson's argument under this issue, we are specifically referring to the remainder of his admission in which he admitted to showing pornographic material to C.B. and masturbating in her presence.

[¶ 23] There is no dispute Ensley did not read Thompson his *Miranda* rights prior to interviewing him at the Dixon County Sheriff's Office. *Miranda* warnings are required whenever a defendant is interrogated while in police custody. *Thompson v. Keohane,* —— U.S. ——, ——, 116 S.Ct. 457, 460, 133 L.Ed.2d 383, 388 (1995); *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719 (1977).

> Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warning to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'

*Id.* The United States Supreme Court reaffirmed the *Mathiason* standard in *California v. Beheler,* 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983). We cited the *Mathiason* standard with approval most recently in *State v. Darby,* 1996 SD 127, ¶ 25, 556 N.W.2d 311, 318–19. *See also State v. Jenner,* 451 N.W.2d 710, 719 (S.D.1990); *State v. Perkins,* 444 N.W.2d 34, 39 (S.D.1989); *State v. McQuillen,* 345 N.W.2d 867, 869 (S.D.

1984); *State v. Branch,* 298 N.W.2d 173, 175 (S.D.1980).

[¶ 24] In *Darby,* we noted the test in determining whether Miranda warnings are required " 'is not whether the investigation has focused on any particular suspect, but rather, whether the person being questioned is in custody or deprived of his or her freedom to leave.' " 1996 SD 127, ¶ 25, 556 N.W.2d 311 (quoting *State v. Bruske,* 288 N.W.2d 319, 322 (S.D.1980) and citing *Mathiason* ). *See also Stansbury v. California,* 511 U.S. 318, 326, 114 S.Ct. 1526, 1530, 128 L.Ed.2d 293, 301 (1994) ("Our cases make clear, in no uncertain terms, that any inquiry into whether the interrogating officers have focused their suspicions upon the individual being questioned (assuming those suspicions remain undisclosed) is not relevant for purposes of *Miranda.*").

[¶ 25] In *Stansbury,* the United States Supreme Court recently expanded on the *Mathiason* analysis, holding that "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Id.* at 323, 114 S.Ct. at 1529, 128 L.Ed.2d at 298.

> An officer's knowledge or beliefs may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned. Those beliefs are relevant only to the extent they would affect how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her 'freedom of action.' Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest. The weight and pertinence of any communications regarding the officer's degree of suspicion will depend upon the facts and circumstances of the particular case. In sum, an officer's views concerning the nature of an interrogation, or beliefs concerning the potential culpability of the individual being questioned, may be one among many factors that bear upon the assessment whether

that individual was in custody, but only if the officer's views or beliefs were somehow manifested to the individual under interrogation and would have affected how a reasonable person in that position would perceive his or her freedom to leave.

*Id.* at 325, 114 S.Ct. at 1530, 128 L.Ed.2d at 300 (internal citations omitted).

[¶ 26] Our review of the circumstances surrounding the interrogation of Thompson by Ensley indicates he was not so deprived of his freedom as to be "in custody" for *Miranda* purposes. The facts indicate that Thompson was asked to come to the sheriff's office for questioning by Deputy Donny Taylor, a person known to Thompson. Taylor called Thompson the day before and asked Thompson what his schedule was like, telling Thompson that he needed to talk with him about something important and asking when Thompson could come into the sheriff's office to discuss it. Thompson said he could be in at 2:00 the following day and the interview was arranged for this time. Thompson drove his own vehicle to the sheriff's office.

[¶ 27] Thompson's testimony at the suppression hearing indicates he was not so deprived of his freedom to leave to the degree associated with a formal arrest.

Q: Well, how come you didn't get up when Mr. Ensley left the room twenty minutes into the interview? Why didn't you get up and leave?

A: Well, first of all, the main thing was— is I suppose common courtesy. He said he would be back. He just had to go do something and he would be back. It wasn't over with yet. And then I did not know if the door was locked or wasn't locked, or what was to be expected. I didn't know if Donny Taylor was out there waiting to come in after he had talked to me or what, after it had gone that far, because the initial interview was to talk to Donny Taylor. Nothing else was said. So after I got there and this man comes to me and identifies himself as a South Dakota policeman— you know—and then Donny Taylor wasn't there, but he said he would be there at 2:00—

Q: At the time he left the room, had you reached the point, in your mind, where you felt that your liberty was restrained to leave? In other words, had the questioning become aggressive to that point?

A: Yes. He was aggressive enough to make me think that I had better stay there.

[¶ 28] Despite this statement by Thompson, in response to a leading question by his attorney, the facts show that Ensley informed Thompson that he was not under arrest and would not be charged that day and that he did not have to talk to Ensley. The facts also show that during the interview Ensley informed Thompson that he was free to leave. The taped interview, which was introduced at trial as a State's exhibit, and which the jury heard, was reviewed by this Court. Throughout the tape, the tone is conversational. Immediately following the break, Ensley's tone was more insistent than it had been earlier in the questioning, however, the tone of both parties quickly became conversational again. Both parties appeared calm at all times, and at no time was Ensley hostile or accusatory. At no time was Thompson ordered to stay. Although the questioning took place in a closed-door room of the sheriff's office, we have previously held a closed, or even locked, door does not, in and of itself, create a custodial interrogation. *Darby,* 1996 SD 127, ¶ 26, 556 N.W.2d at 319 (citing *State v. McQuillen,* 345 N.W.2d 867, 870 (S.D.1984)). Thompson was not restrained in any way and was free to move about. No threats or physical force were used. *See McQuillen,* 345 N.W.2d at 870. Here, all of the other indicia of arrest or custody are absent. We hold the trial court did not err in finding Thompson was not in custody at the time of the admissions and no *Miranda* warning was required.

[¶ 29] Thompson further claims his statements should be suppressed because they were involuntarily made. When this Court examines a claim of involuntariness of the confession we consider the effect the totality of the circumstances had upon the will of the defendant and whether the defen-

dant's will was overborne. *Darby,* 1996 SD 127, ¶ 28, 556 N.W.2d at 319 (citing *State v. Dickey,* 459 N.W.2d 445, 447 (S.D.1990)). The factors we consider in making such a determination include: 1) the defendant's youth; 2) the defendant's lack of education or low intelligence; 3) the absence of any advice to the defendant of his constitutional rights; 4) the length of detention; 5) the repeated and prolonged nature of questioning; and 6) the use of physical punishment such as the deprivation of food or sleep. *Id.* In reviewing the trial court's finding on voluntariness, we consider the evidence in the light most favorable to the finding. *Id.* (citing *State v. Oltmanns,* 519 N.W.2d 602, 605 (S.D.1994)).

[¶ 30] The evidence in this case indicates Thompson was 43 years old at the time of the April 1994 questioning. The State notes on appeal that he is a large man, implying that he is not easily intimidated. Although he had dropped out of high school in the seventh grade, he had a background in the military and he has completed his G.E.D. His responses on the taped interview do not suggest a lack of education or low intelligence. The interrogation was not custodial so there was no advice regarding Thompson's constitutional rights, although as we noted above, Thompson was informed he was not under arrest and was free to leave. The length of detention was approximately one hour and fifteen minutes with a short break sometime during the interview. There is no evidence of repeated or prolonged questioning and no evidence that Thompson was deprived of food or sleep. The interview took place at 2:00 in the afternoon, and Thompson drove himself to the sheriff's office after having been requested the previous day to come in for questioning.

[¶ 31] We noted in *Darby* that "[a] defendant's prior experience with law enforcement officers and the courts may also be a factor for the court's consideration." 1996 SD 127, ¶ 30, 556 N.W.2d at 320 (citing *State v. Caffrey,* 332 N.W.2d 269, 272 (S.D.1983)). Thompson had previously served time in a federal prison under a conviction of perjury. He testified during the suppression hearing that he was aware of his right to remain silent and his right against self-incrimination,

having been advised of these rights by attorneys and judges on previous charges.

[¶ 32] "Deception or misrepresentation by the officer receiving the statement may also be factors for the trial court to consider." *Id.* at ¶ 31, 556 N.W.2d at 319 (citing *Jenner,* 451 N.W.2d at 719). Although Ensley was not in uniform during the questioning, Thompson admitted that he knew Ensley was a policeman and that Ensley never tried to conceal that fact from him. Further, Ensley made no statements to Thompson during questioning which would have coerced or manipulated his free will such that he was not able to "make an unconstrained, autonomous decision to confess." *Dickey,* 459 N.W.2d at 448. Thompson does not claim Ensley made any promises or inducements to him which resulted in his admissions. *See McQuillen,* 345 N.W.2d at 871–72. Under the circumstances present here, we do not find the trial court's determination that Thompson's admissions were voluntary, to be clearly erroneous.

[¶ 33] **3. Whether the trial court erred in denying Thompson's motions to dismiss, for a judgment of acquittal, and for a new trial on the sexual contact charge where the only evidence supporting the charge was Thompson's uncorroborated admission?**

[¶ 34] This question ultimately is a challenge to the sufficiency of the evidence to convict Thompson of sexual contact with a minor under the age of sixteen. SDCL 22–22–7.

Our standard of review of a denial of a motion for judgment of acquittal is whether State set forth sufficient evidence from which the jury could reasonably find the defendant guilty of the crime charged. *State v. Abdo,* 518 N.W.2d 223, 227 (S.D. 1994); *State v. Gallipo,* 460 N.W.2d 739, 742 (S.D.1990). In determining the sufficiency of the evidence to constitute the crime, the question is 'whether there is sufficient evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt; in making this determination, the court will accept the evidence, and the

most favorable inference fairly drawn therefrom, which will support the verdict.' *State v. Heftel,* 513 N.W.2d 397, 399 (S.D. 1994) (citations omitted).

*State v. McGill,* 536 N.W.2d 89, 91–92 (S.D. 1995).

[¶ 35] The jury was permitted to hear Thompson's taped confession in which he admitted C.B. had touched his penis when it was both limp and erect. Thompson claims the only evidence offered to sustain his conviction on the charge of sexual contact was this uncorroborated admission which is not enough under this Court's holding in *State v. Best,* 89 S.D. 227, 232 N.W.2d 447 (1975). In *Best,* we stated "[t]he almost universal rule is that the admissibility of an extrajudicial confession is conditioned upon its corroboration by other evidence. The same principle has been applied to incriminating admissions." 89 S.D. at 235, 232 N.W.2d at 452 (citing *Tabor v. United States,* 152 F.2d 254 (4th Cir.1945); *Opper v. United States,* 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954)).

[¶ 36] Corroborating evidence must establish the corpus delicti of the crime by independent proof. *State v. Lowther,* 434 N.W.2d 747, 754 (S.D.1989); *State v. Garza,* 337 N.W.2d 823, 824 (S.D.1983); *State v. Bates,* 76 S.D. 23, 28, 71 N.W.2d 641, 644 (1955). "The corroborating evidence must show (1) the fact of an injury or loss, and (2) the fact of someone's criminal responsibility for the injury or loss. These two elements have been held to compromise the 'corpus delicti' for purposes of the rule requiring such corroboration." *Best,* 89 S.D. at 235, 232 N.W.2d at 452. The identity of the perpetrator is not an element of corpus delicti. *Bates,* 76 S.D. at 28, 71 N.W.2d at 644.

[¶ 37] "The evidence of corpus delicti, independent of the extrajudicial admission of the accused, need not be conclusive in character. Nor must the independent evidence be such that it alone is sufficient to prove the crime beyond a reasonable doubt." *Id.* 76 S.D. at 28, 71 N.W.2d at 644. However, there must be "such extrinsic corroborating or supplemental circumstances as will, when taken in connection with the admis-sions, establish beyond a reasonable doubt that the crime was in fact committed by someone." *Id.* (citations omitted).

The corpus delicti may be established by circumstantial evidence, and by the reasonable inferences to be drawn from such evidence. While slight evidence is sufficient to establish the corpus delicti, it must be proved entirely independent of and without considering the defendant's extrajudicial statements.

*Best,* 89 S.D. at 236, 232 N.W.2d at 453 (quoting *People v. Cantrell,* 8 Cal.3d 672, 105 Cal.Rptr. 792, 796, 504 P.2d 1256, 1260 (1973)).

[¶ 38] The State offered the following as evidence corroborating Thompson's admission of sexual contact of C.B.: 1) Thompson cared for C.B., V.B., and Ch.B. on several occasions in his trailer home; 2) Thompson was often alone with the girls during these occasions; 3) all three girls made accusations of sexual misconduct; 4) all three girls named Thompson as the only perpetrator; 5) a physical examination of the girls revealed signs suggesting sexual penetration; and 6) the alleged acts were very similar to one another in that they all involved sexual misconduct with these girls. However, as Thompson correctly argues, there is not a single fact in this evidence that corroborates his admission that C.B. touched his penis. C.B. testified at trial and at all times steadfastly denied that such contact ever occurred and there is no physical or circumstantial evidence that establishes otherwise. The State's proffer of evidence that the girls showed signs suggesting sexual penetration had occurred does not support the charge of sexual contact, as our statute defining "sexual contact" specifically excludes sexual penetration. SDCL 22–22–7.1; 22–22–2; *Darby,* 1996 SD 127, ¶¶ 15–20, 556 N.W.2d at 317; *State v. Brammer,* 304 N.W.2d 111, 114 (S.D. 1981). There was no evidence presented through testimony of Dr. Shelso who examined C.B. or Ms. O'Brien who interviewed her that C.B. had ever made such a claim to these professionals. *See Garza,* 337 N.W.2d at 824 (victims' statements to examining physician provided necessary corroboration of the defendant's confession). In fact, O'Brien

testified affirmatively that C.B. made no such disclosure to her.

[¶ 39] We do not find sufficient corroborating evidence to establish that the crime of sexual contact of C.B. was committed. Corpus delecti may not be presumed. *Bates*, 76 S.D. at 28, 71 N.W.2d at 644. We hold the trial court erred in denying Thompson's motion for judgment of acquittal on the charge of sexual contact. We remand to the trial court with instruction to reverse the judgment convicting Thompson of sexual contact, strike the sentence of twenty years imprisonment given for this conviction and enter judgment of acquittal of Thompson on the charge of sexual contact of a minor under the age of sixteen.

[¶ 40] We affirm in part and reverse in part and remand to the trial court with instruction.

[¶ 41] MILLER, C.J., and SABERS, AMUNDSON, and KONENKAMP, JJ., concur.

