#23840-a-JKM

**2006 SD 100**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,               Plaintiff and Appellee,

v.

DERRICK E. CAROTHERS,               Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BROOKINGS COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE DAVID R. GIENAPP
Judge

\* \* \* \*

LAWRENCE E. LONG
Attorney General

GARY CAMPBELL
Assistant Attorney General          Attorneys for plaintiff
Pierre, South Dakota                and appellee.

SEAN M. O'BRIEN                      Attorney for defendant
Brookings, South Dakota             and appellant.

\* \* \* \*

ARGUED ON OCTOBER 4, 2006

OPINION FILED **11/15/06**

MEIERHENRY, Justice

[¶1.] A jury found Derrick E. Carothers (Carothers) guilty of Sexual Contact with a Child Under Sixteen and Criminal Pedophilia. Carothers was subsequently found to be an habitual offender and was sentenced to life in prison. He appeals and raises numerous issues. We affirm.

## Background

[¶2.] The charges against Carothers stem from an incident on October 2, 2003 involving the four-year old child, S.T. Carothers had babysat S.T. and her siblings the previous night. He asked to stay with the family one more night and Mother agreed. After the evening meal, Carothers went upstairs to the computer room and engaged in internet chat and masturbation. Soon after Carothers left to use the computer, the child went upstairs to play with some toys. Carothers was alone with the child about an hour. The next morning, the child revealed to her mother what had happened while she was alone with Carothers. The child came into the bathroom where Mother was doing laundry, pushed a stool against the door and locked it. She then told Mother that "he" had touched her in a bad place, indicating her vaginal area and pointed to Carothers' location in the adjacent dining room.

[¶3.] Later that day, Mother took the child to the local medical clinic for an examination. They also met with law enforcement officers at the clinic. The child told law enforcement officers that Carothers had licked her in her vaginal area, placed his hand and fingers on her vaginal area, moved them back and forth a lot of times, and put his hands in her pants. She further indicated that his pants were

unzipped and he had licked her, grabbed her, and wanted to kiss her but she did not want to. Later, she also told Mother that Carothers had put a spoon under the door of the bedroom to keep the door closed. Mother subsequently found the spoon on the floor and called law enforcement to collect it and other potential evidence.

[¶4.] Carothers became aware of the child's accusations and contacted law enforcement through a friend to indicate that he wished to speak to them. He reiterated his willingness to speak to law enforcement after police officers contacted him. Consequently, the officers asked Carothers to accompany them to the station to conduct an interview and Carothers agreed. Prior to beginning the interview, the officers advised Carothers that he was not under arrest and was free to leave at any time. The interview took place in the basement of the police station and lasted approximately 85 minutes.

[¶5.] A few days after the incident, the child's mother took her to A Child's Voice for an evaluation.[1] As part of the evaluation, the child was interviewed by Colleen Brazil (Brazil), a social worker. During this interview, the child gave Brazil further details of the alleged sexual contact and said that Carothers had warned her not to tell her mother.

[¶6.] On November 26, 2003, a grand jury indicted Carothers for three offenses: Sexual Contact with a Child Under Sixteen, Kidnapping, and Criminal Pedophilia. On December 31, 2003, the State filed a notice of intent to offer the child's statements at trial. The trial court first ruled to admit them under SDCL

---

1. A Child's Voice examines children who are possible victims of physical or sexual abuse. Children are interviewed to gather a history for the physician or other medical provider in order for them to diagnose and treat the child.

#23840

19-16-38.[2]  However, because of the subsequent United States Supreme Court decision in *Crawford v. Washington,* the trial court reversed its prior ruling and concluded that the child's statements to law enforcement officers and Brazil were inadmissible because the testimonial statements were not subject to cross-examination at the time they were made.  541 US 36, 12 SCt 1354, 158 LEd2d 177 (2004).  The State appealed the ruling.  We reversed concluding that the statements were admissible because they did not need to be subject to cross-examination at the

---

2.     SDCL 19-16-38 provides:

> A statement made by a child under the age of ten, or by a child ten years of age or older who is developmentally disabled as defined in § 27B-1-18, describing any act of sexual contact or rape performed with or on the child by another, or describing any act of physical abuse or neglect of the child by another, or any act of physical abuse or neglect of another child observed by the child making the statement, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings against the defendant or in any proceeding under chapters 26-7A, 26-8A, 26-8B, and 26-8C in the courts of this state if:
> (1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and
> (2) The child either:
> (a) Testifies at the proceedings; or
> (b) Is unavailable as a witness.
> However, if the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
> No statement may be admitted under this section unless the proponent of the statement makes known his intention to offer the statement and the particulars of it, including the name and address of the declarant to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet the statement.

time they were made if the child was available and subject to cross-examination at trial. State v. Carothers (Carothers I), 2005 SD 16, ¶14, 692 NW2d 544, 549.

[¶7.] A jury subsequently found Carothers guilty of Sexual Contact with a Child Under Sixteen and Criminal Pedophilia. In a separate trial, Carothers was found to be a habitual criminal and was sentenced to life in prison. Carothers appeals and raises several issues.

## Analysis and Discussion

### *Indictment*

[¶8.] Carothers first claims that the circuit court should have dismissed the indictment against him because of prosecutorial misconduct at the grand jury stage of the proceedings. Carothers specifically claims that the prosecutor improperly introduced evidence of Carothers' prior criminal record to the grand jury in violation of SDCL 19-12-5 (FedREvid 404(b)). The grand jury heard evidence of his prior convictions when Mother testified. In answer to a question by the State's Attorney about Carothers' prior record, she answered that she was aware "that [Carothers] had been in prison for grand theft, but that's the extent that I was told." Carothers also alleges that the State's Attorney presented other highly suggestive and misleading testimony. Mother's testimony appears in the settled record, but the other testimony of which he complains does not. Since we can only review what appears in the settled record, we are limited to reviewing Mother's testimony. Spenner v. City of Sioux Falls, 1998 SD 56, ¶9, 580 NW2d 606, 610 (citing Nauman v. Nauman, 336 NW2d 662, 664 (SD 1983)). Additionally, the trial court's review of an indictment is limited by statute and we review the trial court's decision to grant

or deny a motion to dismiss an indictment under an abuse of discretion standard. State v. Vatne, 2003 SD 31, ¶8, 659 NW2d 380, 383.

[¶9.] Carothers contends that the indictment should have been dismissed under SDCL 23A-8-2(3), which directs the court to dismiss an indictment "[w]hen it does not substantially conform to the requirements of this title." Carothers claims that a requirement of the title is that the rules of evidence apply to grand jury proceedings. SDCL 23A-5-15. Even though the rules of evidence apply to grand jury proceedings, we have previously said that we "will not inquire into the legality or sufficiency of the evidence upon which an indictment is based." *Vatne*, 2003 SD 31, ¶14, 659 NW2d at 384 (holding that an indictment could not be dismissed based on claim that testimony was hearsay and incompetent) (internal quotations omitted). The rationale for our limited inquiry is that "[a]n indictment returned by a legally constituted and unbiased grand jury, [is] like an information drawn by the prosecutor, [and] if valid on its face, is enough to call for trial of the charge on the merits." State v. Cameron, 1999 SD 70, ¶11, 596 NW2d 49, 52 (quoting State v. Hoekstra, 286 NW2d 127, 128 (SD 1979)). "[N]either the Fifth Amendment, nor justice and the concept of a fair trial, require[ ] indictments to be open to challenge on the grounds that there was inadequate or incompetent evidence before the grand jury." State v. Kleinsasser, 436 NW2d 279, 281 (SD 1989). Because Carothers alleges only evidentiary violations, we conclude that the trial court did not abuse its discretion in refusing to dismiss the indictment.

**Admissibility of Child's Testimony**

[¶10.]        This case originally came before the Court in *Carothers I*, on the limited issue of whether *Crawford v. Washington* precluded the admission of the child's out of court statements to law enforcement and Brazil.  2005 SD 16, ¶6, 692 NW2d 544, 546.  We concluded that under the Confrontation Clause, prior cross-examination was not required for the admission of the child's hearsay statement if the child is available and subject to cross examination at trial.  *Id*. ¶14.  We did not review the trial court's determination of competency nor did we consider Carothers' argument that the child was unavailable.  *Id*. ¶13.  Carothers now raises both of these issues, which we consider separately.

      *1. Competency*

[¶11.]        Carothers argues that the child was not competent to testify.  Therefore, he argues that she was unavailable as a witness and the admission of her out of court statements violated his Sixth Amendment Rights.  "The determination of the competency of a witness is left in the first instance to the discretionary judgment of the trial court, after informing itself by proper examination."  State v. Guthmiller, 2003 SD 83, ¶11, 667 NW2d 295, 301 (internal quotations omitted).  The trial court's determination will only be reversed upon a showing of an abuse of discretion.  State v. Anderson, 2000 SD 45, ¶23, 608 NW2d 644, 653 (citation omitted).

[¶12.]        There is no general rule regarding a child's inherent reliability nor is there any arbitrary age at which a child is deemed competent to testify.  *Id*. ¶24.  Instead, the standard for determining whether a child is competent to testify is

whether she or he has "sufficient mental capacity to observe, recollect, and communicate, and some sense of moral responsibility." *Id*. (internal quotations omitted).

[¶13.]    The trial court initially determined that the child was competent to testify after hearing testimony on March 25, 2004 pursuant to the State's motion to introduce hearsay statements made by the victim at trial. The trial judge questioned the child about her knowledge of the difference between a truth and a lie and observed the child testify about her recollection of the incident with Carothers as well as her prior contact with Brazil and law enforcement. In addition, the judge heard testimony from Brazil about her interactions with the child. The State also submitted a video-taped interview of the child conducted by Brazil which demonstrated the child's knowledge of the difference between a truth and a lie and her ability to recollect and narrate impressions. The trial court subsequently found the child competent to testify and noted that "the observations of the child testifying before the Court indicate[d] that she does understand the difference between what is truth and what is not truth and there [was] consistency relating to the statements."

[¶14.]    At trial on May 3, 2005,the trial judge questioned the child outside the presence of the jury and again concluded that the child was competent to testify. He made the following oral finding: "the minor child knows the difference between truth and not truth and meets the basic threshold of competency to testify." The trial court "is vested with wide discretion in determining competency and on appeal, its ruling is entitled to great weight." *Id*. ¶23 (citation omitted). Based on our

review of the record, the trial court did not abuse its discretion when it found the child competent to testify.

### 2. *Availability*

[¶15.]    After observing the child testify at trial, the trial court concluded that she was available. The trial court affirmed this finding when it denied Carothers' motion for a new trial where Carothers alleged that "the minor child was unavailable to testify as a witness considering the answers which she gave during her testimony in both direct and cross-examination." The trial court noted, "[s]ince victim testified, was subject to cross-examination and was available, Defendant's right of confrontation was satisfied pursuant to *Crawford v. Washington* and the introduction of hearsay evidence regarding such victim as otherwise authorized by statute didn't violate Defendant's constitutional rights." Carothers argues that the trial court abused its discretion when it concluded that the child was available.

[¶16.]    Although a witness may take the stand and testify, the admission of a witness' prior statements requires a "full and effective cross-examination." State v. McKinney, 2005 SD 73, ¶21, 699 NW2d 471, 479 (quoting California v. Green, 399 US 149, 159, 90 SCt 1930, 1935, 26 LEd2d 489, 497 (1970)). This requirement is derived from the Sixth Amendment's Confrontation Clause, which provides "the accused the right 'to be confronted with the witnesses against him.'" United States v. Owens, 484 US 554, 558, 108 SCt 838, 841, 98 LEd2d 951 (1988). This right is "'generally satisfied when the defense is given a full and fair opportunity to probe and expose [a witness'] infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness'

testimony.'" *Id.* (quoting Delaware v. Fensterer, 474 US 15, 21-22, 106 SCt 292, 295, 88 LEd2d 15 (1985)). However, when the witness is a young child, there are additional concerns in satisfying the Confrontation Clause because the child may simply be "too young and too frightened to be subjected to a thorough direct or cross-examination" as envisioned by the Constitution. United States v. Spotted War Bonnet, 933 F2d 1471, 1474 (8thCir 1991) (internal quotations omitted). Therefore, we must determine whether Carothers was afforded full and effective cross-examination.

[¶17.] Carothers points to deficiencies in the child's testimony that, he claims, prevented full and effective cross-examination. First, Carothers contends that the integrity of the child's testimony was compromised because she stated that she liked the witness assistant. However, Carothers does not point to, nor could we find, any instance in the child's testimony that was compromised by this relationship. Second, Carothers contends that the child was unable to repeat statements she made earlier and repeatedly answered that she did not know. Based on our review of the record and of the approximately one hundred questions asked on cross-examination, we find only six instances where the child answered that she did not remember. These questions concerned her memory of being a certain age and her ability to remember the content of her prior statements to law enforcement, doctors, and Brazil. He claims that her inability to remember her prior statements makes her unavailable just as a similar inability to remember prior statements made the child witness in *State v. McCafferty* unavailable. 356 NW2d 159, 163 (SD 1984). The child in *McCafferty*, however, was not only unable

to repeat prior statements, but could not testify to the facts at trial. *See id.* Her inability to testify to facts at trial was important in the analysis. In making this determination, we distinguished the Eighth Circuit case of *United States v. Iron Shell*, noting that the nine year old child in *Iron Shell* had testified to facts which supported her prior statements although she could not repeat her earlier statements. *Id.* (citing to *Iron Shell*, 633 F2d at 87).

[¶18.]     This distinction is applicable in evaluating the child's testimony in this case. Like the child in *Iron Shell*, the child testified to facts which supported her prior statements when she recounted the facts surrounding her sexual contact with Carothers. 633 F2d at 87. Although she may not have been able to repeat exactly what she told Brazil, police officers or doctors; she did remember speaking to them and responded that she remembered telling Brazil "the truth." Therefore, she afforded the jury a satisfactory basis for evaluating the truth of her prior statements. While Carothers may not have been satisfied with the child's testimony, the Constitution "guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" Kentucky v. Stincer, 482 US 730, 739, 107 SCt 2658, 2664, 96 LEd2d 631, 643 (1987) (quoting *Fensterer*, 474 US at 20, 106 SCt at 294) (emphasis in the original). Thus, we affirm the trial court's conclusion that the child was available for purposes of cross-examination, satisfying Carothers' constitutional rights under the Sixth Amendment's Confrontation Clause. Because we conclude that the trial court did not err in concluding the child was available, we

need not address Carothers' other arguments concerning the child's testimony and the constitutionality of SDCL 19-16-38.

**Admissibility of Defendant's Statement to Law Enforcement Officers**

[¶19.]     Carothers argues that his statements to law enforcement officers should have been suppressed because he was not given *Miranda* warnings.  The trial court concluded that Carothers was not in custody such as to require the giving of *Miranda* warnings.  Our standard of review is well settled, motions to suppress based on alleged violations of constitutionally protected rights are reviewed de novo. State v. Sweedland, 2006 SD 77, ¶12, 721 NW2d 409, 412.

[¶20.]     "*Miranda* warnings are required whenever a defendant is interrogated while in police custody."  State v. Thompson, 1997 SD 15, ¶23, 560 NW2d 535, 540. "The test in determining whether *Miranda* warnings are required 'is not whether the investigation has focused on any particular suspect, but rather, whether the person being questioned is in custody or deprived of his or her freedom to leave.'" State v. Herting, 2000 SD 12, ¶9, 604 NW2d 863, 865 (quoting *Thompson*, 1997 SD 15, ¶24, 560 NW2d at 540).  "[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned."  Stansbury v. California, 511 US 318, 323, 114 SCt 1526, 1529, 128 LEd2d 293 (1994).  We have said "*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'"  *Thompson*, 1997 SD 15, ¶23, 560 NW2d at 540 (quoting Oregon v. Mathiason, 429 US 492, 495, 97 SCt 711, 714, 50 LEd2d 714, 719 (1977)).

[¶21.] Our review of the facts and the taped interview which was submitted to the jury, indicates Carothers was not so deprived of his freedom as to be "in custody" for purposes of *Miranda*. On the evening of October 3, 2003, Carothers, either personally or through another, contacted law enforcement and said that he wanted to talk to someone about the allegations against him. Consequently, law enforcement officers went to a residence in Brookings where Carothers was present. Carothers again indicated that he wanted to talk to law enforcement and agreed to accompany the officers to the police department.

[¶22.] Prior to questioning, the officers advised Carothers that he was not under arrest, that he was free to leave at any time, and that he did not have to answer any of the officer's questions. Throughout the interview, the tone of the questioning was conversational in nature. No threats or physical force were used to elicit any information. *See id.* ¶28; State v. McQuillen, 345 NW2d 867, 870 (SD 1984). Although the interview took place behind closed doors, "we have previously held a closed, or even locked, door does not, in and of itself, create a custodial interrogation." *Thompson,* 1997 SD 15, ¶28, 560 NW2d at 541 (citing State v. Darby, 1996 SD 127, ¶26, 556 NW2d 311, 319). Thus based on the evidence, the trial court correctly concluded that the officer's interrogation was noncustodial and did not require prior *Miranda* warnings.

[¶23.] Carothers further claims that his statements should have been suppressed because they were involuntarily made. When examining the voluntariness of a confession, "we consider the totality of the circumstances, giving deference to the trial court's factual findings, but performing a de novo review of the

record, and making 'an independent determination of the ultimate issue of voluntariness.'" State v. Tofani, 2006 SD 63, ¶30, 719 NW2d 391, 399 (quoting State v. Tuttle, 2002 SD 94, ¶20, 650 NW2d 20, 30). The factors we consider in this inquiry include: "(1) the defendant's age; (2) the defendant's lack of education or low intelligence; (3) the absence of any advice to the defendant of [his or her] constitutional rights; (4) the length of detention; (5) the repeated and prolonged nature of the questioning; and (6) the use of physical punishment such as deprivation of food or sleep." Id. ¶30 (internal quotations omitted).

[¶24.]        Applying the above standards to the facts of this case, we note that Carothers was 28 years of age at the time the questioning took place and that he had a sufficient level of intelligence to understand that he was free to leave at any time. Carothers was not advised of his constitutional rights. The length of the detention was approximately 85 minutes and ended at Carothers' request. He was not physically punished nor deprived of food or sleep. Although Carothers claimed he had recently had two beers, he did not appear to be under the influence of any alcohol or other drugs. Another factor to consider is a defendant's prior experience with law enforcement. Tuttle, 2002 SD 94, ¶22, 650 NW2d at 31. Carothers indicated that he had several prior experiences with law enforcement and the court system and had been released from the Illinois State Penitentiary approximately four months prior to his interview with police. Carothers has made no allegation of any misrepresentation or deception by the police officers during the interview and we find no evidence of such conduct. Based upon the totality of the circumstances,

we conclude that the trial court did not err in finding that Carothers' statements were voluntarily made.

**Improper Final Argument and Admissibility of Evidence at Trial**

[¶25.]      Carothers claims reversible error based on a comment made by the State's Attorney in his closing argument to the jury. Although no objection was made at trial, Carothers claims the comment constituted plain error. Plain error requires the defendant to show "(1) error; (2) that is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." State v. Page, 2006 SD 2, ¶15, 709 NW2d 739, 750 (internal quotations omitted); *see also* SDCL 23A-44-15. The plain error rule is applied cautiously and we will only invoke our discretion in exceptional circumstances. State v. Nelson, 1998 SD 124, ¶8, 587 NW2d 439, 443.

[¶26.]      Carothers alleges that plain error occurred during the State's Attorney's closing argument. Carothers takes issue with the State's Attorney's reference to a statement Carothers made in his interview with law enforcement officers. The taped interview was introduced into evidence and shown to the jury. In a portion of the interview, Carothers discussed seeing the child lying on the floor of the dining room, rubbing a plastic shovel on her panties. Carothers stated this was abnormal conduct for a little girl. He also stated that the child's uncle had witnessed the incident and commented on her actions. Although Carothers could not remember the exact words the uncle had used, he stated that it was something like "you little pervert."

[¶27.] Based on this portion of the interview between Carothers and the officers, the State's Attorney made the following statements in his closing arguments:

> In that taped interview on the 3rd of October, and the Defendant was making mention of something about a shovel, and he said, was asked by Lieutenant Miller, "What did he say, [what did] Allan say to [S.T.]?" [Carothers responded] "Well, I don't know what he said but [something about a] little pervert." Lieutenant Miller asked, "Was that his words?" [Carothers stated],"No, those are mine." Ladies and gentlemen, in that house the 1st and 2nd of October, there may have been a pervert, but it was not [S.T.].

[¶28.] Viewed in context, the State's Attorney was merely referring to evidence already heard by the jury. Therefore, the context of the State's Attorney's comment in addition to its singular reference does not rise to the level of misconduct and needs no further analysis. *Cf.* State v. Smith, 1999 SD 83, 599 NW2d 344 (finding nonprejudicial misconduct where prosecutor repeatedly called defendant a "monster," "pervert," "child molester," "sexual predator," and a "tyrant").

[¶29.] The remaining issues raised by Carothers pertain to the habitual offender proceeding. Carothers argues that the court erred in admitting Exhibits 4, 5, 7, 9 and 10, which resulted in unfair prejudice and the presentation of cumulative evidence. We review a trial court's evidentiary ruling under an abuse of discretion standard. State v. Jolley, 2003 SD 5, ¶5, 656 NW2d 305, 307. Under this standard, "we do not determine whether we would have made a like decision, only whether a judicial mind, considering the law and the facts, could have reached a similar decision." *Id.*

[¶30.] Exhibits 4, 5, and 7 consist of information relating to Carothers' three prior convictions alleged in the habitual offender information. These exhibits included a cover sheet attesting to the accuracy of the attached fingerprint card, the fingerprint card, and the penitentiary entrance record for each conviction, including two photographs of Carothers.

[¶31.] The fingerprint card in Exhibit 4 showed the final disposition of Carothers' burglary conviction, which Carothers contends was irrelevant to the prosecution's burden of proof. Under the habitual offender statutes, the prosecution has the burden of providing sufficient evidence of identity. *See* State v. Loop, 422 NW2d 420, 424 (SD 1988); SDCL 22-7-11. In meeting this burden, certified fingerprint cards are deemed admissible without providing an evidentiary foundation. SDCL 22-7-11. Even though the information on the fingerprint card repeated the final disposition of Carothers' burglary conviction and may have been cumulative, the card was relevant to proving Carothers was an habitual criminal. "Whether the probative value of relevant evidence has been substantially outweighed by danger of unfair prejudice due to its cumulative nature is within the discretion of the trial court." State v. Devall, 489 NW2d 371, 375 (SD 1992). Consequently, we cannot say that the trial court abused its discretion.

[¶32.] Carothers also argues that providing two sets of photographs in Exhibits 5 and 7 was excessive. However, the photographs established identity, a question of fact for the jury which had to be established beyond a reasonable doubt. Stuck v. Leapley, 473 NW2d 476, 479 n4 (SD 1991). Providing the jury with a photograph for each conviction established that the "Derrick E. Carothers" before

the jury was the same "Derrick E. Carothers" who had been convicted of each crime. Accordingly, we conclude that the trial court did not abuse its discretion in admitting Exhibits 4, 5, and 7.

[¶33.]     Exhibit 9 consisted of a Knox County, Illinois, information charging Carothers with aggravated battery and criminal damage to state property while incarcerated as well as the judgment relating to those charges. Exhibit 10 was an Illinois Verification of Incarceration listing Carothers' convictions in that state. Carothers asserts that including both Exhibit 9 and 10 was prejudicial and unnecessary.

[¶34.]     Under SDCL 22-7-9, "only one prior conviction arising from the same transaction may be considered" in determining the number of defendant's prior convictions. Exhibit 9 was provided to illustrate that the battery and criminal damage charges listed in Exhibit 10 arose from a separate transaction than the other charges listed in Exhibit 10. Therefore, the trial court did not abuse its discretion in admitting Exhibits 9 and 10.

[¶35.]     Carothers next argues that the trial court erred in ordering him to exhibit his tattoos to the jury. We have previously held that when identity is at issue, a defendant may be required to show his tattoo without violating his right against self-incrimination. State v. Knoche, 515 NW2d 834, 839 (SD 1994). A description of Carothers' tattoos was provided in an Illinois prison document included in the State's exhibits. While Carothers contends that displaying his tattoos to the jury was prejudicial because fingerprints and photographs had already been submitted into evidence, the cumulative nature of the evidence is

within the sound discretion of the trial court. *Devall*, 489 NW2d at 375. Therefore, we conclude that the trial court did not abuse its discretion in ordering Carothers to display his tattoo to the jury.

[¶36.] Carothers also claims that the trial court abused its discretion concerning the number of his prior convictions that were submitted to the jury in the habitual offender trial. He contends that providing the jury with all of his prior convictions resulted in unfair prejudice. He cites no authority for this argument, and we conclude that the trial court did not abuse its discretion in the number of prior convictions it submitted to the jury.

[¶37.] Finally, Carothers claims that the trial court erred by not instructing the jury to determine if his prior convictions were crimes of violence or felonies under South Dakota or United States law. His arguments have no merit since both issues involve questions of law that are decided by the court rather than questions of fact decided by the jury. *See* State v. Stuck, 434 NW2d 43, 47 (SD 1988) (finding that the determination of whether an offense is a felony is not a question of fact for the jury but a matter of law predetermined by the legislature and applied by the judiciary); SDCL 22-7-8 (enhancing sentences when there are three or more felony convictions in addition to the principal felony if one of the prior felonies was a crime of violence); SDCL 22-1-2(9) (defining "crime of violence").

[¶38.] Accordingly, we affirm on all issues.

[¶39.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.