#25871-a-GAS

**2011 S.D. 77**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

RYLAN WAYNE WALTH,                        Defendant and Appellant.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PETER H. LIEBERMAN
Judge

* * * *

MARTY J. JACKLEY
Attorney General

CRAIG M. EICHSTADT
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                     and appellee.


NICOLE LAUGHLIN
CHERI SCHARFFENBERG
Minnehaha County Public
 Defender's Office
Sioux Falls, South Dakota                 Attorneys for defendant
                                     and appellant.

* * * *

ARGUED OCTOBER 5, 2011

OPINION FILED **11/16/11**

SEVERSON, Justice

[¶1.]    Rylan Wayne Walth (Walth) was convicted of one count of possession with intent to distribute a schedule I and/or II drug and one count of simple possession of a controlled drug.  Prior to trial, Walth filed a motion to suppress statements he made to a police officer on the grounds that his *Miranda* rights were violated.  The trial court denied the motion to suppress.  We affirm.

## BACKGROUND

[¶2.]    On April 25, 2009, Lance Bosch was working as a security guard at Wiley's Tavern in Sioux Falls, South Dakota.  Brett McClay, a disc jockey at Wiley's Tavern, notified Bosch that he witnessed a drug transaction take place in the bathroom of the bar.  He identified Walth as the individual who allegedly sold the drugs.  Bosch approached Walth to discuss the accusation.  During this discussion, Bosch asked Walth if he had any drugs in his possession.  Walth handed Bosch a cellophane wrapper.  Bosch smelled marijuana on the wrapper.

[¶3.]    Bosch led Walth to Detective Gries, an off-duty officer with the Sioux Falls Police Department who was also working as a security guard at Wiley's Tavern that night.  Detective Gries was dressed in plain clothes but had a set of handcuffs and a pistol in a holster on his hip.  He was standing near the back door of the bar.  Bosch handed the cellophane wrapper to Detective Gries and informed him Walth had been accused of selling drugs in the bathroom.  Detective Gries also determined the cellophane wrapper smelled of marijuana.

[¶4.]    Detective Gries identified himself to Walth as a Sioux Falls Police Officer and asked Walth to accompany him outside the back door of the bar for

questioning. Upon exiting the bar, Detective Gries showed Walth his police issued badge and identification card. Detective Gries then verified Walth's identity. It is unclear from the record whether Walth produced an Iowa driver's license or some other identification card. The record is also unclear as to the length of time Detective Gries retained possession of the identification card.

[¶5.]     After verifying Walth's identity, Detective Gries questioned Walth about what had occurred in the bathroom of the bar. Walth admitted he sold marijuana to a friend. Detective Gries asked Walth if he had any additional drugs in his possession. Walth stated that he did not. However, when Detective Gries posed the question a second time, Walth reached in his pocket and pulled out several pills. Walth identified these pills as ecstasy.

[¶6.]     Within two minutes of stepping outside, Detective Gries placed Walth under arrest. While waiting for the transport officer to arrive, which took an additional five to ten minutes, Detective Gries read Walth his *Miranda* warnings and asked him if he would be willing to answer questions. Walth agreed to answer the detective's questions and admitted to selling ecstasy to two separate people in the bathroom of Wiley's Tavern.

[¶7.]     The Minnehaha County Grand Jury indicted Walth on one count of possession with intent to distribute a schedule I and/or II drug and one count of simple possession of a controlled drug. Prior to trial, Walth filed a motion to suppress the statements he made to Detective Gries prior to his arrest on the grounds that his *Miranda* rights were violated. Walth also argued that the *Miranda* violation tainted the statements Walth made to Detective Gries after he

was arrested and received a *Miranda* advisement. In addition, Walth argued that the physical evidence he handed to Detective Gries was inadmissible as fruit of the *Miranda* violation. The trial court denied the motion to suppress after hearing the matter on December 9, 2009. Walth waived his right to a trial by jury. The case proceeded to a court trial and Walth was convicted of all charges.

## DECISION

[¶8.] **Whether the statements Walth made to Detective Gries prior to his arrest were made while Walth was in custody, thus requiring a *Miranda* advisement.**

[¶9.] Walth argues Detective Gries violated his Fifth Amendment right against self-incrimination by eliciting statements from Walth without first administering a *Miranda* warning. Walth thus contends the trial court erred in failing to grant his motion to suppress the incriminating statements.

[¶10.] "The Fifth Amendment right against self-incrimination is implicated whenever an individual is subject to custodial interrogation by law enforcement." *State v. Bowker*, 2008 S.D. 61, ¶ 26, 754 N.W.2d 56, 64 (citing *State v. Rhines*, 1996 S.D. 55, ¶ 11, 548 N.W.2d 415, 426). An individual is subject to custodial interrogation if he is "'deprived of his freedom of action in any significant way.'" *Id.* (quoting *State v. Hamm*, 89 S.D. 507, 514, 234 N.W.2d 60, 64 (1975)). As we explained in *State v. Wright*:

> "Any interview of one suspected of a crime by a police officer will
> have coercive aspects to it, simply by virtue of the fact that the
> police officer is part of a law enforcement system which may
> ultimately cause the suspect to be charged with a crime. Nor is
> the requirement of warning to be imposed simply because the
> questioning takes place in the station house, or because the
> questioned person is one whom the police suspect. *Miranda*
> warnings are required only where there has been such a

> restriction on a person's freedom as to render [him or her] 'in custody.'"

2009 S.D. 51, ¶ 19, 768 N.W.2d 512, 520 (quoting *State v. Johnson*, 2007 S.D. 86, ¶ 22, 739 N.W.2d 1, 9).

[¶11.]     In determining whether an individual is in custody for purposes of *Miranda*, the subjective views of the interrogating officer and the individual being questioned are not relevant considerations. *Bowker*, 2008 S.D. 61, ¶ 26, 754 N.W.2d at 64 (citing *State v. Thompson*, 1997 S.D. 15, ¶ 25, 560 N.W.2d 535, 540). Rather, "'[w]hether an individual is in custody is determined by how a reasonable man in the suspect's position would have understood his situation.'" *Id.* (quoting *State v. Hoadley*, 2002 S.D. 109, ¶ 24, 651 N.W.2d 249, 256).

[¶12.]     A two-part test is utilized to determine whether an individual is in custody at the time of questioning:

> "First, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."

*Wright*, 2009 S.D. 51, ¶ 19, 768 N.W.2d at 520 (quoting *Johnson*, 2007 S.D. 86, ¶ 22, 739 N.W.2d at 9).

[¶13.]     The first part of the test involves factual determinations as to "'the circumstances surrounding the interrogation.'" *Bowker*, 2008 S.D. 61, ¶ 27, 754 N.W.2d at 65 (quoting *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S. Ct. 457, 465, 133 L. Ed. 2d 383 (1995)). We review a trial court's factual determinations

regarding these circumstances under a clearly erroneous standard. *Id.* (citing *State v. Aesoph*, 2002 S.D. 71, ¶ 12, 647 N.W.2d 743, 750). "However, the application of those facts to the determination of whether a reasonable person under those circumstances would consider themselves to be in custody is a question of law." *Id.* (citing *Keohane*, 516 U.S. at 112, 116 S. Ct. at 465). We review questions of law de novo. *Wright*, 2009 S.D. 51, ¶ 18, 768 N.W.2d at 519 (quoting *State v. Ball*, 2004 S.D. 9, ¶ 21, 675 N.W.2d 192, 199).

[¶14.]        Walth argues that he was in custody from the moment Detective Gries asked him to step outside of the bar. In support of this argument, Walth notes Detective Gries only made contact with Walth because he suspected Walth had committed a crime. After Detective Gries escorted Walth outside of the bar, the detective immediately showed Walth his badge as well as his identification card. The questioning took place outside of the bar and apart from the crowd of people located inside the bar. Walth argues that under these facts, a reasonable person would not feel free to leave the scene.

[¶15.]        We have held the test for determining whether *Miranda* warnings are necessary "'is not whether the investigation has focused on any particular suspect, but rather, whether the person being questioned is in custody or deprived of his or her freedom to leave.'" *Johnson,* 2007 S.D. 86, ¶ 22, 739 N.W.2d at 9 (quoting *State v. Carothers,* 2006 S.D. 100, ¶ 20, 724 N.W.2d 610, 619). "'Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest.'" *Thompson,* 1997 S.D. 15, ¶ 25, 560

N.W.2d at 540 (quoting *Stansbury v. California*, 511 U.S. 318, 325, 114 S. Ct. 1526, 1530, 128 L. Ed. 2d 293). Thus, the fact that Detective Gries initially questioned Walth because he had been accused of committing a crime does not necessarily render Walth "in custody" for purposes of *Miranda*.

[¶16.]        In *State v. Anderson,* we held that a defendant's acceptance of an officer's invitation to go to a police station and speak with the police did not constitute custodial interrogation. 2000 S.D. 45, ¶ 77, 608 N.W.2d 644, 666. We noted the defendant was not restrained in any way and that he voluntarily agreed to accompany the officers to the police station. *Id*. Although the interview itself took place in an interrogation room with an automatic lock, we held that "'a closed, or even locked [ ] door does not, in and of itself, create a custodial interrogation.'" *Id*. ¶ 70 n.21 (citing *Thompson*, 1997 S.D. 15, ¶ 28, 560 N.W.2d at 541). After considering the circumstances surrounding the interrogation in *Anderson*, we determined a reasonable person would have felt free to terminate the interview and leave at any time. *Id*. ¶ 79. Thus, we held the defendant was not in custody for purposes of *Miranda*. *Id*. *See Carothers,* 2006 S.D. 100, 724 N.W.2d 610 (finding an interrogation that took place behind closed doors was noncustodial because the officers advised the defendant he was not under arrest, "the tone of the questioning was conversational in nature," and "[n]o threats or physical force were used to elicit any information").

[¶17.]        Here, the record shows Walth voluntarily agreed to speak with Detective Gries. The questioning took place in a neutral area, near a sidewalk and a parking lot. It was done in the open and in full view of the public. Although

Detective Gries identified himself as a police officer, he did not place any restraints on Walth. Detective Gries testified the tone of the questioning was conversational in nature and no threats or physical force were used to elicit any information. Walth was placed under arrest within two minutes of exiting the bar to speak with Detective Gries. Under these facts, prior to his arrest, Walth's freedom of movement was not restrained so as to render the interrogation custodial.

[¶18.]     A review of the circumstances existing at the time of Detective Gries's interview with Walth reflects that a reasonable person would have understood he or she was at liberty to terminate the interview and leave. We find "no indication that [Walth] was coerced into making any statements through the 'inherently compelling pressures' of a custodial setting." *Johnson,* 2007 S.D. 86, ¶ 28, 739 N.W.2d at 10 (citing *Miranda v. Arizona,* 384 U.S. 436, 467, 86 S. Ct. 1602, 1624, 16 L. Ed. 2d 694 (1966)). Thus, the trial court did not err in denying Walth's motion to suppress. There being no *Miranda* violation, we need not address Walth's remaining claims.

[¶19.]     Affirmed.

[¶20.]     GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and WILBUR, Justices, concur.